[Civ. No. 5014. Third Appellate District.—November 6, 1933.]

BESSIE M. MARTIN, Petitioner, v. BOARD OF SUPER-VISORS OF THE COUNTY OF LAKE, Respondent.

Charles Kasch for Petitioner.

Burt W. Busch for Respondent.

THOMPSON, J.—The petitioner seeks a writ of *mandamus* to compel the Board of Supervisors of Lake County to issue to her a license to sell nonintoxicating beverages at a restaurant in Nice. It is contended the application therefor was arbitrarily denied without affording the petitioner an opportunity for a legal hearing thereof.

On May 22, 1933, pursuant to the provisions of section 4041.14 of the Political Code, in the exercise of its police power, the Board of Supervisors of Lake County enacted Ordinance No. 202 under the provisions of an act of the legislature enacted in April, 1933, entitled:

"An act to levy an excise tax and to regulate the manufacture, distribution and sale of certain beverages; to provide for the licensing of the manufacture, distribution and sale; prescribe penalties for the violation of this act and to provide that this act shall take effect immediately."

The ordinance provides in part:

"Section 2. As used in this ordinance:

"(a) 'Beverage' means and includes any beer, lager beer, ale, porter, wine, similar fermented malt or vinous liquid, and fruit juice, or other fermented beverage containing not less than one-half of one per cent and not more than three and two-tenths per cent of alcohol by weight.

. . . . . . . . . . . .

"(c) 'On sale license' means and includes a license to sell beverages at retail for consumption only on the premises in respect to which the license is issued.

. . . . . . . . . . . .

"Section 3. The Board of Supervisors is hereby designated as a licensing board for the issuance of 'on sale' and 'off sale' licenses under this ordinance.

"Section 4. Any person desiring a license to engage in or carry on 'on sale' or 'off sale' retail sales of beverages as herein defined shall make application in writing to the Board of Supervisors upon such forms as may be prescribed, and containing such information as may be prescribed by said Board of Supervisors. Said application shall be left with the Clerk of the Board of Supervisors.

"Section 5. Upon receipt of any application for a license the Board of Supervisors shall investigate and deny said application if:

"(a) The applicant is not of good moral character; or

"(b) The premises with which the license is to be issued do not comply with the provisions of this ordinance; or

"(c) The premises and equipment or the plans and specifications thereof in respect to which the license is to be issued are injurious to the public health and safety; or

. . . . . . . . . . . .

"Section 8. Each person to whom a license is issued or for whom a license is renewed hereunder, shall pay to the County of Lake for each period of one year as herein defined, a licensing fee as follows:

"(a) For each 'on sale' license, or renewal thereof, the sum of $25.00.

. . . . . . . . . . . .

"Section 10. 'On sale' licenses shall be granted only to *bona fide* restaurants, public eating houses, clubs, boarding houses and/or hotels.''

The selling of beverages contrary to the provisions of this ordinance is made a misdemeanor and punishable by a fine not to exceed $500, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

Upon a form supplied to the petitioner by the clerk as prescribed by the Board of Supervisors, she filed a verified application for license which conforms in every respect to the requirements of the ordinance. Without any hearing by the Board of Supervisors and without opportunity on the part of the petitioner to offer proof in support of her application for license, the board arbitrarily denied her petition on June 30, 1933. The only minute order with respect to petitioner's application for a license was entered on the last-mentioned date, as follows: "On motion and vote of the Board, the application of Bessie M. Martin for 'on sale' beverage license for the year beginning July 1, 1933, is hereby rejected.''

While it is true that certain *ex parte* statements were made to the board by the district attorney and the sheriff of Lake County tending to indicate the unfitness of the petitioner and the unsuitable surroundings of her restaurant, justifying a denial of her license, still, it is uncontradicted that no formal hearing of the petition was had and no judicial evidence, as that term is defined by section 1823 of the

Code of Civil Procedure, was adduced. The proceedings of the board were entirely unofficial, and their action in denying the petition was arbitrary and irregular.

■ The foregoing ordinance regulating the licensing and sale of beverages in connection with the places of business therein specified is a reasonable and lawful exercise of the police powers of the Board of Supervisors of Lake County. Section 4041.14 of the Political Code provides that:

"Under such limitations and restrictions as are prescribed by law, and in addition to jurisdiction and powers otherwise conferred, the boards of supervisors, in their respective counties, shall have the jurisdiction and powers to license, in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise, all and every kind of business not prohibited by law . . . "

■ *Mandamus* is the proper remedy to require a board of supervisors to exercise a clear duty imposed upon it by law. It is also the proper remedy where it clearly appears that the board has acted arbitrarily and in abuse of its discretion. (*Bleuel* v. *City of Oakland,* 87 Cal. App. 594 [262 Pac. 477]; 16 Cal. Jur. 816, sec. 32; 18 R. C. L. 292, sec. 225; 38 C. J. 696, sec. 269.) It is a well-recognized rule that *mandamus* will not lie to control the *quasi*-judicial discretion of a board to grant or deny a license upon a proper hearing therefor. (16 Cal. Jur. 809, sec. 28; 33 C. J. 554, sec. 149.)

■ When a board of supervisors is charged by law with the duty of issuing licenses upon specified terms and conditions, that tribunal becomes a *quasi*-judicial body for determining the facts and exercising sound and reasonable discretion in the performance of its duty. Since a board of supervisors is only a *quasi*-judicial body in its investigation and determination of the merits of petitions for licenses in conformity with the provisions of an ordinance, its hearings may be somewhat informal and need not conform in all respects to the solemnity of a court proceeding. Nevertheless, the law does contemplate a fair and impartial hearing of an application for a license with an opportunity for the petitioner to present competent evidence for the consideration of the board. (*Reed* v. *Collins,* 5 Cal. App. 494 [90 Pac. 973]; 33 C. J. 548, secs. 138–141.) By the

great weight of authority, as appears from the text in 33 C. J., at page 548:

"One who has made an application for license is entitled to a hearing by the licensing authority." On page 549 of the same volume it is further said:

"Where the hearing on an application for a license is held before a court, or before a board which acts in a judicial capacity, the proceedings are in the nature of a civil action and are governed by the ordinary rules of judicial procedure applicable thereto."

 It is not necessary that the hearing upon an application for a license to conduct a particular business or to sell a certain commodity pursuant to statute shall be held with all the formality of a court of justice. The very nature of such *quasi*-judicial tribunals has led the courts to recognize the excuse for some informality in their procedure. This informality, however, does not justify the denial of a hearing, or the refusal to permit a fair presentation of the petitioner's claim, or the arbitrary denial of a license in conflict with undisputed facts. (*Forest Lawn Memorial Park Assn., Inc.,* v. *State Board of Embalmers, etc.,* 134 Cal. App. 73 [24 Pac. (2d) 887]; *Stockwell* v. *Equitable Fire & Marine Ins. Co.,* 134 Cal. App. 534 [25 Pac. (2d) 873].) It is true that an individual has no vested right to engage in the business of selling intoxicating liquor. (*Ritz* v. *Lightston,* 10 Cal. App. 685, 689 [103 Pac. 363].) The regulation of that business is governed by legal principles different from those which apply to what may be termed inherently lawful avocations. While it is contended the ordinance which is involved in this proceeding purports to license only nonintoxicating beverages, we are satisfied the interpretation of this act should be governed by the same rules which apply to the regulation of intoxicating drinks. A court may not take judicial notice of just what percentage of alcohol mingled with beer, ale or wine will necessarily intoxicate a particular individual, or just what quantity of the beverage will have that effect. (33 C. J. 498, sec. 17.) It is true that the sale of the beverages which are affected by the ordinance which is involved in this case are the ones which are uniformly recognized as a detriment to the peace and morals of a community. That is the very reason the board of super-

visors, in the exercise of its police powers, is authorized to regulate the business by means of an ordinance. ██ In spite of the fact that a vested right to engage in the dispensing of these beverages may not exist, still the law contemplates a fair and impartial hearing of any application for a license which has been filed in strict conformity with the law. What is said in 5 C. J. 84, section 175, regarding the hearing and procedure of a board of arbitration, seems to be also applicable to the proceedings before a board of supervisors in an application for a license in the present case. It is there said:

"It may be stated, as a general proposition, that parties are always entitled to a hearing before the arbitrators, and, although arbitrators are not bound by strict rules of evidence, they cannot transgress that fundamental principle of justice which declares that no man shall be condemned without the opportunity of being heard. The parties are entitled to a hearing upon all the matters submitted. 'The injustice is the same, and the injury as great, to deprive one of a right without a hearing before arbitrators as before a court.' And the right is one which no statute can be so construed as to abrogate. So the fact that the arbitrators in denying the parties a hearing acted in perfect good faith, merely mistaking their duty in this respect, in no way affects the operation of the rule. The parties may, of course, waive their right to a hearing by an express agreement. But nothing short of plain and clear words will be sufficient for that purpose."

It would be preposterous to concede that any judicial tribunal could be clothed with the arbitrary power of issuing licenses and regulating business subject only to its own caprice; that with or without a hearing on the merits of the application, with or without reason, or upon *ex parte* statements or rumors, with no opportunity of refuting them, the board could grant or deny a petition for license. This is not the purpose or spirit with which regulatory statutes are enacted. Law contemplates justice whether it is granted as a privilege or recognized as a vested right. We therefore conclude that the right to engage in the sale of beverages under the ordinance of Lake County may not be arbitrarily denied by the Board of Supervisors without a hearing or an opportunity on the part of the petitioner to

present the merits of her application to the licensing tribunal.

In support of its claim that neither a formal hearing nor the reception of sworn testimony was necessary upon which to predicate an order denying petitioner's application for a license to sell beverages in her restaurant, the following cases are relied upon by the respondent, to wit: *People* v. *Supervisors of San Francisco,* 20 Cal. 591, *Guzzi* v. *McAlister,* 21 Cal. App. 276 [131 Pac. 336], *Ritz* v. *Lightston,* 10 Cal. App. 685 [103 Pac. 363], and *Goytino* v. *McAleer,* 10 Cal. App. 683 [103 Pac. 174]. Nothing is contained in any of these cases which is in conflict with what has been heretofore said. In none of these cases was the lack of a hearing or the absence of judicial evidence involved.

The petitioner contends that since Congress has lately passed an act authorizing the sale of beer containing not to exceed 3.2 per cent of alcohol, this is a determination that such beer is not intoxicating since the Eighteenth Amendment to the Constitution of the United States prohibits the sale of all intoxicating beverages. It is asserted the petitioner therefore has a vested right to sell beer containing not more than that percentage of alcohol, without the necessity of first procuring a license to do so, since the sale of that beverage under such circumstances is rendered lawful by the act of Congress. But neither of these acts precludes the Board of Supervisors of Lake County from adopting reasonable ordinances, under its police power, regulating the sale of beer, wine, ale or porter, regardless of whether these beverages are intoxicating or not. Moreover, it was held in *People* v. *Supervisors of San Francisco, supra,* that:

"The relator cannot have a *mandamus* to compel the granting of a license under the law for a reason which, if valid, shows the law to be void."

For the reason that it appears without conflict that the petitioner's application for a license to sell beverages under the Lake County ordinance was arbitrarily denied without affording her the formality of a hearing, we are of the opinion the writ of *mandamus* should issue. This court does not presume to interfere with the reasonable discretion of the board to determine the fitness of the petitioner or the suitableness of her place of business in rejecting or

granting the license upon judicial evidence which may be adduced at a proper hearing.

The writ of *mandamus* is granted directing the Board of Supervisors of Lake County to grant petitioner a hearing and to afford her the opportunity of presenting competent evidence thereat in support of her application for a license.

Pullen, P. J., and Plummer, J., concurred.