[Civ. No. 8318. Third Dist. Mar. 5, 1954.]

FRANK ANDREWS, Appellant, v. STATE BOARD OF REGISTRATION FOR CIVIL AND PROFESSIONAL ENGINEERS, etc., et al., Respondents.

F. M. Brack and A. M. Frad for Appellant.

Edmund G. Brown, Attorney General, and August F. Cetti, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—On June 14, 1948, petitioner filed with respondent board a written application for registration as an electrical engineer without examination. On March 29, 1949, he was notified by a letter from respondent board that his application was denied. Thereafter he filed a petition for a writ of mandate to compel the issuance to him of said certificate of registration. This appeal is from a judgment discharging an alternative writ of mandate and denying the petition for a peremptory writ.

The Business and Professions Code sets forth a statutory scheme for the registration of professional engineers. The provisions involved in this appeal were added to the code in 1947, as sections 6800 through 6814. The entire chapter, which contained these provisions, was recodified in 1951 and is now set out in the code, starting with section 6700.

Section 6800 states that the registration law "pertains to registering of professional engineers in the branches of . . . electrical . . . engineering." Section 6801 defines a professional engineer as a "person engaged in professional practice of rendering service or creative work requiring education, training and experience in engineering sciences, and the application of special knowledge of the mathematical, physical and engineering sciences in such professional or creative work as consultation, evaluation, planning or design of public or private utilities, structures, machines, processes, circuits, buildings, equipment or projects, and supervision of construction for the purpose of securing compliance with specifications and design for any such works." Section 6802 provides that only persons who are registered by respondent board shall be entitled to take and use the title of "professional engineer" and, if registered in the field of electrical engineering, the title of "electrical engineer." In this connection, section 6813 makes it unlawful for any person not so registered to use these titles. The practical effect of these sections is to prevent a person from practicing electrical engineering unless he is registered, for without registration he cannot hold himself out to be a professional engineer or an electrical engineer.

Section 6803 provides that in order to entitle a person to registration *without examination,* the applicant must, on or before June 30, 1948, submit to respondent board, under oath, "evidence satisfactory to the board that the person is possessed of the qualifications specified in Section 6804." The qualifications, as set out in section 6804, are that the applicant must:

"(a) Furnish satisfactory evidence of good moral character;

"(b) Pay the application fee;

"(c) Furnish evidence of six years or more of experience in engineering work satisfactory to the board evidencing that the applicant is competent to practice the character of engineering in the branch for which he is applying for registration, . . ."

Respondent board is authorized by section 6717 of the code to adopt rules, not inconsistent with law, needed to govern its action. Apparently pursuant to this authority respondent board adopted Administrative Rule No. 403, which provides:

" 'Electrical Engineering' is that branch of professional engineering which embraces studies or activities relating to the generation, transmission, and utilization of electrical energy, including the design of electrical and magnetic circuits and the technical control of their operation and of the design and manufacture of electrical gear. It is concerned with research, organizational, and the economic aspects of the above."

Appellant applied to respondent board for registration, without examination, as a professional engineer in the field of electrical engineering. In making this application appellant used a printed application form furnished by respondent board and swore to same. It is admitted that appellant filed the application with respondent board prior to June 30, 1948, and that he paid the required fee. By letter dated March 29, 1949, respondent board denied the application, stating as its reason:

"It is the opinion of the Board that your application does not indicate that you have had six years experience in electrical engineering as required by statute. Accordingly you have been declared ineligible for registration and your application has been denied. For your information electrical engineering as defined in Administrative Rule #403 reads: [quoting the rule]."

Section 6803 of the code authorizes respondent board to prescribe all application forms. The application form in question instructs the applicant that every question must be answered fully. In order to fully understand and evaluate the application and petitioner's answers thereto, we think it is necessary to see the application itself. A facsimile of it was introduced in evidence and the portions dealing with questions 10 and 11 and the answers thereto are as follows:*

Typographical errors in the dates under Engagement numbers 7 and 8*, were corrected by amendment at the trial to read: "1924-1927" and "1928-1945."

It will be noted that Question 10 requests the applicant to set out the nature and extent of his education, consisting of preparatory schooling, college work, postgraduate work,

---

*See following pages for application forms.

10. The nature and extent of my education are:

*a.* PREPARATORY (Grammar, High or Private Schools)

| NAME AND LOCATION OF INSTITUTION | ATTENDANCE | | DID YOU GRADUATE (Yes or No) | DATE OF GRADUATION |
|---|---|---|---|---|
| | FROM (Year) | TO (Year) | | |
| High School | Toolong ago to remember | | | |
| | | | | |
| | | | | |

*b.* COLLEGE OR UNIVERSITY (Indicate here ONLY full time enrollment; not night or extension classes)

| NAME AND LOCATION OF INSTITUTION | ATTENDANCE | | COURSE ENROLLED (AS C.E., M.E., ETC.) | DID YOU GRADUATE (Yes or No) | DATE OF GRADUATION | DEGREE RECEIVED |
|---|---|---|---|---|---|---|
| | FROM (Month and Year) | TO (Month and Year) | | | | |
| I-v-School | Home study | | | | | |
| Jolledge of hard knocks | 1902 to date | | | | | |
| | | | | | | |
| | | | | | | |

*c.* POSTGRADUATE WORK
I have done the following postgraduate work.
(Note name and location of institution, period in which work was done, courses completed and degrees received.)

*d.* EXTENSION AND CORRESPONDENCE WORK
I have taken the following correspondence and extension courses.
(Name only those in which you were regularly enrolled.)

11. My practical experience in Professional Engineering is summarized below. (Outline your experience record since you commenced the practice of professional engineering. Number each engagement in chronological order beginning with your earliest engagement. List all engagements of whatever nature, but under the "Time Engaged" column enter only those portions spent in professional engineering practice as defined in Section 6801. Before recording the items of time, read carefully Sections 6703, 6751 and 6801 of the Civil Engineers' Act.)

| ENGAGEMENT NUMBER | DATE | | (In this column state (a) nature, location and character of work; (b) magnitude of work; (c) name and title of superiors; (d) your duties.) | TIME ENGAGED | | NAME AND ADDRESS OF MY EMPLOYER |
|---|---|---|---|---|---|---|
| | FROM | TO | | Total Time | Engineering Charge | |
| 1 | 1902 | 1904 | Owner Pikes Peak Repair Works Installing Steam-Gas-Engines-for Irrigation and Oil wells Electrical Engineer United Oil Co. Florence Jolo. | | | |
| 2 | 1905 | 1906 | Electrical Engineer Jolorado Midland R.R Light and Power-Telephone- Telegraph and the first RR crossing signals Jolorado Jity Jolorado. | Some of | | |
| 3 | 1906 | 1907 | Electrical Engineer Reno & Mona Electric RR. Reno Nev. | | | |
| 4 | 1988-1910 | | Engineer and Owner Fallon Light & Power Jo. Fallon Nevada | | | |
| 5 | 1910-1911 | | Electrical Engineer Studebaker Jo. San Francisco--- Electric Trucks and Jars. | | | |
| 6 | 1912 | 1924 | Owner Andrews Magneto & Motor Works Farmer lines and Telephone Work Electrical La Grange Dredge and Power Jp. Generating power at 11,000 Volts and Tranmission at same voltage (over) | | | |

| ENGAGEMENT NUMBER | DATE | | (In this column state (a) nature, location and character of work; (b) magnitude of work; (c) name and title of supervisor; (d) your duties.) | TIME ENGAGED | | NAME AND ADDRESS OF MY EMPLOYER |
|---|---|---|---|---|---|---|
| | FROM | TO | | Total Time | Responsible Charge | |
| 7 | 1934 | 1927 | Went broke in 1924 depression Engineer and Manager Kewin Mills Steam and Electric Power Plant--Near Sonora Cal Taught--Winter Electrical Class Modesto High School. | | | |
| 8 | 1928 | 1945 | Owner Andrews Electrical Motor Works Frank Andrews- Mechanical & Electrical Engineering Hundreds of engineering jobs on Irrigation- Gravel-Pitts-Canning Plants-Milk Plants-Lining Saw mill and other problems-- | | | |
| 9 | 1945 | to date | Frank Andrews-Mechanical & Electrical Engineering Industrial Plant Surveys- Radio-Sound on Film and general Electrical Engineering. | | | |
| 10 | | | HOLDER CALIFORNIA STATE CONTRACTORS LICENSE-C-10- ELECTRICAL--For Years #23004 -July 14,1931. | | | |
| 11 | | | Hold Retailers Permit #3816 since 1933. | | | |
| 12 | | | | | | |

and extension and correspondence work. Question 11 asks the applicant to summarize his practical experience in professional engineering, outline his experience record since he commenced the practice of professional engineering and list all engagements of whatever nature, but to enter under the "Time Engaged" column only those portions spent in professional engineering practice as defined in section 6801.

In answer to Question 10, appellant wrote "High School" for the name and location of his preparatory school, and wrote "Too long ago to remember" in the attendance date column. He did not, as requested, state whether he had graduated. It may be pointed out in this regard that appellant was 67 years of age when he made the application. Asked to show the colleges or universities attended, the attendance dates, engineering courses taken, and degrees received, he wrote "I-C-School" - "Home Study," and "College of hard knocks"- "1902 to date." If the "I-C-School" mentioned was intended to refer to a correspondence school, he did not so

show under the section requesting him to state what extension and correspondence work he had taken.

Question 11 dealt with the applicant's professional engineering experience and it will be noted that in one column the applicant is required to state "(a) nature, location and character of work; (b) magnitude of work; (c) name and title of supervisor; (d) your duties." In the "Time Engaged" column the applicant is required to show the "Total Time" and the "Responsible Charge."

It is apparent from an examination of the application form and appellant's answers thereto that he made no effort to show in the "Time Engaged" column what part of the work he mentions was spent in professional engineering practice, nor does he give any sufficient detail about the work he performed that would justify the respondent board in concluding that he had had six years or more of the type of engineering work to indicate that he was competent to practice professional engineering or electrical engineering as the same are hereinbefore defined in section 6801 of the Business and Professions Code and Rule No. 403 of the respondent board.

In Question 8 of the application form, appellant was asked to list the professional and honorary organizations of which he was a member in good standing. He did not list any such organization.

After receiving notice of the rejection of his application, appellant petitioned the superior court for a writ of mandate to compel respondent board to issue a registration certificate to him. Respondents (the board and the individual members) demurred to the original petition. The demurrer was sustained, leave to amend was given, and appellant filed an amended petition. Respondents answered the amended petition, putting in issue appellant's allegations that he was a person of good moral character, that he had furnished evidence of six years or more of experience in engineering work satisfactory to show that he was competent to practice electrical engineering, and that respondent board had acted arbitrarily in rejecting appellant's application for registration. Respondents' answer also affirmatively alleges that appellant does not possess six *months* (sic) or more of experience in electrical engineering, as differentiated from the work of an electrician, mechanic or electrical contractor; that appellant has had no education or training in mathematical, physical or engineering sciences and has no knowledge of

engineering science; and that appellant has never furnished evidence of six years or more of experience in any engineering work satisfactory to respondent board and evidencing that appellant is competent to practice electrical engineering.

At the trial appellant introduced in evidence a copy of the application and the original of the letter of rejection, obtained a stipulation that the required fee had been paid, and then rested. The due filing of the application had been admitted by the answer. Respondents offered no evidence, their counsel stating that they were willing to rest on the fact that respondent board had acted within its discretion in denying the registration on the basis of the application. The trial court made findings, and judgment was entered discharging the alternative writ and denying a peremptory writ. Appellant's motion for new trial was denied, whereupon appellant brought this appeal.

Appellant's position upon this appeal, and as it was in the trial court, is "If the application was sufficient the writ should have been granted; if the application is insufficient the writ was properly denied." Appellant points out that according to the record the only evidence before respondent board, pertaining to appellant's qualifications in the field of electrical engineering, was the application filed by appellant, and this application, appellant contends, shows that he had not only six, but 46, years of continuous experience in electrical engineering. He points out further that no objection was made to the form of his answers, that no more complete statement or exact information was requested of him, and that he never had a formal hearing before respondent board. The board's discretion in this matter, he says, is not arbitrary and may not be exercised capriciously, fraudulently or without factual basis sufficient to justify a reversal. His case really rests on the contention that his application shows sufficient professional work experience to qualify him for registration. His statements were made under oath and must be taken as true, he contends, for there is no evidence to the contrary in the record. He is willing to accept the board's definition of electrical engineering as set out in Rule No. 403.

Respondents in reply contend that appellant's application on its face supports the court's findings that respondent board regularly performed its official duty in denying the application, that appellant did not furnish evidence of six

years or more of engineering work experience satisfactory to respondent board and showing his competency to practice electrical engineering, and that respondent board did not abuse its discretion in denying the application. Respondents argue that the application itself fails to show that appellant had sufficient work experience in the field of electrical engineering to qualify him for registration, and that it is evident from a reading of the application that appellant failed to furnish the information requested of him with respect to his professional experience. They assert he did not show experience in electrical engineering within the meaning of the definition laid down by the board, and which he says he is willing to accept, and that his answers do not show that he ever worked as a professional engineer within the meaning of the definition set out in section 6801 of the code.

While there is much force in respondents' criticism of the sufficiency of appellant's application to show that he was entitled to registration as a professional engineer without examination, we are still confronted with the question as to whether or not respondent board acted arbitrarily in rejecting his application and declaring him ineligible for registration without requesting a more complete statement of his work and affording him a hearing.

The cases of *Martin* v. *Board of Supervisors*, 135 Cal.App. 96 [26 P.2d 843] (decided by this court), and *Fascination, Inc.* v. *Hoover*, 39 Cal.2d 260 [246 P.2d 656], hold that a hearing on the merits is necessary where an administrative agency is charged by law with the duty of issuing licenses upon specified terms and conditions, and that such an agency becomes a quasi-judicial body for determining the facts and exercising sound and legal discretion in the performance of its duty, i.e., determining the merits of the application. While its procedure may be somewhat informal, such informality does not justify the denial of a hearing.

In *Martin* v. *Board of Supervisors, supra,* the county ordinance regulating the sale of beverages containing above a certain percentage of alcohol, designated the board of supervisors as the licensing board for the issuance of licenses to sell beverages. A person desiring a license should apply in writing to the board, giving such information as the board prescribed. Upon receipt of the application the board shall "investigate" and deny such application if the applicant and the premises to be used for his business did not conform to specified conditions. Plaintiff filed an application for a

license which was denied by the board without notice or hearing. On mandamus the court directed the board to afford plaintiff a hearing, stating at pages 100-103:

"When a board of supervisors is charged by law with the duty of issuing licenses upon specified terms and conditions, that tribunal becomes a *quasi*-judicial body for determining the facts and exercising sound and reasonable discretion in the performance of its duty. Since a board of supervisors is only a *quasi*-judicial body in its investigation and determination of the merits of petitions for licenses in conformity with the provisions of an ordinance, its hearings may be somewhat informal and need not conform in all respects to the solemnity of a court proceeding. Nevertheless, the law does contemplate a fair and impartial hearing of an application for a license with an opportunity for the petitioner to present competent evidence for the consideration of the board. (*Reed* v. *Collins,* 5 Cal.App. 494 [90 P. 973]; 33 C.J. 548, secs. 138-141.) By the great weight of authority, as appears from the text in 33 C.J., at page 548: 'One who has made an application for license is entitled to a hearing by the licensing authority.' On page 549 of the same volume it is further said: 'Where the hearing on an application for a license is held before a court, or before a board which acts in a judicial capacity, the proceedings are in the nature of a civil action and are governed by the ordinary rules of judicial procedure applicable thereto.'

". . . It is true that an individual has no vested right to engage in the business of selling intoxicating liquor. (*Ritz* v. *Lightston,* 10 Cal.App. 685, 689 [103 P. 363].) The regulation of that business is governed by legal principles different from those which apply to what may be termed inherently lawful avocations. While it is contended the ordinance which is involved in this proceeding purports to license only nonintoxicating beverages, we are satisfied the interpretation of this act should be governed by the same rules which apply to the regulation of intoxicating drinks. A court may not take judicial notice of just what percentage of alcohol mingled with beer, ale or wine will necessarily intoxicate a particular individual, or just what quantity of the beverage will have that effect. (33 C.J. 498, § 17) . . . In spite of the fact that a vested right to engage in the dispensing of these beverages may not exist, still the law contemplates a fair and impartial hearing of any application for a license which has been filed in strict conformity with the law. . . .

"It would be preposterous to concede that any judicial tribunal could be clothed with the arbitrary power of issuing licenses and regulating business subject only to its own caprice; that with or without a hearing on the merits of the application, with or without reason, or upon *ex parte* statements or rumors, with no opportunity of refuting them, the board could grant or deny a petition for license. This is not the purpose or spirit with which regulatory statutes are enacted. Law contemplates justice whether it is granted as a privilege or recognized as a vested right. We therefore conclude that the right to engage in the sale of. beverages under the ordinance of Lake County may not be arbitrarily denied by the Board of Supervisors without a hearing or an opportunity on the part of the petitioner to present the merits of her application to the licensing tribunal."

In *Fascination* v. *Hoover, supra,* which was a mandamus proceeding to compel a city tax collector, chief of police and city prosecutor to issue a license to operate an amusement game, the Martin case was cited with approval and the foregoing quotation from the Martin case was quoted. The Supreme Court held that a notice and hearing upon the application were required, and·held further that where an application has been denied without a hearing it is proper procedure to remand the matter to the agency or board for further and proper proceedings.

 While the two decisions just cited dealt with local administrative agencies the rule announced therein is equally applicable to a statewide agency such as the respondent board. No reason is apparent why the same rule should not apply to statewide administrative agencies, such as respondent board. Both perform similar quasi-judicial functions. (*Weiss* v. *State Board of Equalization*, 40 Cal.2d 772 [256 P.2d 1].)

In *Southern Calif. Jockey Club, Inc.* v. *California Horse Racing Board*, 36 Cal.2d 167 [223 P.2d 1], it was sought by mandamus to compel the Horse Racing Board to issue a license to conduct a horse racing meeting. Section 19480 of the Business and Professions Code provided that the board may issue a license to any person "who makes application therefor in writing, who has complied with the provisions of this chapter," etc. In that case the board after a hearing denied the application. The Supreme Court affirmed the judgment of the trial court denying the writ of mandamus, and held that on petition to the superior court for a writ of mandate to compel the Horse Racing Board to issue a

horse racing license, the court should not reweigh the evidence before the board and that its sole function is to determine from the record whether there is sufficient evidence to sustain the ruling of the board. The court said at pages 174, 175:

" . . . This rule was announced in *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205], where this court said: 'The legislature has the power to vest in a public officer the discretion to deny an application for a permit to engage in a business subject to regulation when prerequisite facts do not exist. But such a discretion must be exercised within legal bounds. Those bounds are generally that the discretion of the administrative officer or board may not be exercised arbitrarily, capriciously, fraudulently, or without a factual basis sufficient to justify the refusal. . . . A survey of the foregoing authorities discloses that it is the settled general rule of law in this state that where the legislature has by statute clothed an administrative officer with power to ascertain the facts with reference to the fitness of an applicant for a permit to engage in a business subject to regulation under the police power and has vested in such officer the discretion, based on the facts ascertained, to grant or deny a permit to engage in such business the courts will not interfere with the exercise of such discretion except in the case of an abuse thereof. . . . '

" . . . We therefore hold, that in a case such as this, the trial court should not reweigh the evidence, and its sole function is, to determine from a review of the record, whether there is sufficient evidence to sustain the ruling of the board. If the trial court should hold the evidence insufficient, and this holding is attacked on appeal, the court to which the appeal is taken must review the record and determine the sufficiency of the evidence. If the evidence is found to be sufficient, the ruling of the board must be sustained."

We conclude that the respondent board abused its discretion in denying appellant's application without affording him a hearing thereon. While the application as filled out and filed by appellant may not have been sufficient to have entitled appellant to have it granted without further evidence or explanation, we believe it was sufficient to entitle him to a hearing and an opportunity to furnish evidence of six years or more of experience in engineering work satisfactory to the board evidencing that the applicant is competent to practice the character of engineering in the branch for which he is applying for registration. We believe that the

respondent board, in denying his application and declaring him ineligible for registration without affording him a hearing upon his application, acted arbitrarily and contrary to the spirit and intent of the statute.

In view of the foregoing we deem it unnecessary to discuss the other points raised in the briefs.

The judgment is reversed with directions to the trial court to remand the matter to the respondent board for further proceeding in accordance with the views herein expressed.

Van Dyke, P. J., and Peek, J., concurred.