[Civ. No. 9604.   Third Dist.   Oct. 23, 1959.]

THOMAS DANIEL WYATT, Appellant, v. TAHOE FOR-
EST HOSPITAL DISTRICT et al., Respondents.

Clifford R. Lewis and Lewis, Lewis & Lewis for Appellant.

Chamberlain & Chamberlain and Paul H. Chamberlain for Respondents.

Peart, Baraty & Hassard, Howard Hassard, Musick, Peeler & Garrett and James E. Ludlam as Amici Curiae for Respondents.

SCHOTTKY, J.—Thomas Daniel Wyatt appeals from an adverse judgment in an action brought by him to compel the directors of Tahoe Forest Hospital District, a public hospital corporation, to permit him to follow his profession as a physician and surgeon within the hospital, to attend patients, to do all things a duly licensed physician and surgeon would be permitted to do in and about a hospital, and to allow him the rights and privileges of all other practitioners. The trial court considered the action as one for a writ of mandate and after a hearing denied relief.

The hospital district was organized under the provisions of "The Local Hospital District Law." (Health & Saf. Code, §§ 32000 to 32312, inclusive.) It operates a hospital near Truckee, in Nevada County. This hospital is the only California hospital within a radius of 35 miles. Wyatt, who maintains offices at Crystal Bay, Nevada, is licensed to practice in California and Nevada. Most of his patients are California residents. He has been denied use of the facilities of the hospital, and his application for staff membership was denied. The record considered by the directors of the hospital, which consisted of communications from various parties, much of which was hearsay, disclosed that Wyatt was first admitted to practice in California in 1930. In 1936 he was charged with unprofessional conduct in that he offered to and did procure an illegal abortion. In 1938 he was again charged with procuring and performing an illegal abortion operation. His license to practice was revoked in 1939. In October, 1940, his license to practice was reinstated and he was placed on probation for five years. In 1941 he was reprimanded for a violation of the terms of his probation. In addition to the foregoing, it appears from the record that in 1933 a complaint was filed with the Board of Medical Examiners charging Wyatt with being guilty of unprofessional conduct in that he aided and abetted an unlicensed person to practice medicine. This matter was dismissed without preju-

dice and an admonition given. In 1934 Wyatt was fined for removing property from the California Joss House in Weaverville. In May, 1942, the Board of Medical Examiners issued an order to show cause why Wyatt's license should not be revoked for a violation of the terms of his probation. Wyatt was charged with two counts of unprofessional conduct in that he procured an illegal abortion on two individuals and one count of unprofessional conduct in that he had been found guilty of ''the offense of maliciously and willfully disturbing the public peace.'' In this last matter Wyatt's license was revoked by the board, but the decision was reversed by the court. (See *Wyatt* v. *Cerf*, 64 Cal.App.2d 732 [149 P.2d 309].) In March, 1954, a $5,000 judgment was rendered against Wyatt for breach of warranty for failure to remove a uterus. In May, 1954, Mrs. Wyatt brought a separate maintenance action against her husband. She alleged that her husband was always intoxicated. This action was contested and at its conclusion Mrs. Wyatt was awarded a divorce.

By section 32125 of the Health and Safety Code the board of directors of a hospital are empowered to make rules and regulations for the administration and government of the hospital. Section 32128 provides in part that the rules for the hospital shall include provisions for the organization of the physicians and surgeons permitted to practice in the hospital into a staff; ''Provisions that membership on the medical staff shall be restricted to physicians and surgeons competent in their respective fields, worthy in character and in professional ethics . . .;'' and such limitations with respect to the practice of medicine and surgery as the board of directors may find to be in the best interest of the public health and welfare. The section further provides that the rules of the hospital shall, insofar as consistent with the governing statute, be in accord and contain minimum standards not less then those of private hospitals in the district.

The only rules and regulations promulgated by the board of respondent hospital are those pertaining to the medical staff. These were adopted and approved by the governing board of the hospital district. Article III, section 1, on classifications, states:

''Membership to the medical staff shall be limited to those physicians and surgeons licensed to practice in the State of California, whose background, experience and training insures, in the judgment of the Board of Directors, that any patient

admitted to or treated in the Tahoe Forest Hospital will be given the best possible care and professional skill. Possession of a license to practice as a physician and surgeon in the State of California shall constitute only a condition precedent to application, and shall not be itself determinative of the general competence, qualifications, reputation, or character of the applicant, or his general suitability for staff practice." The medical staff is divided into various categories, but, with certain exceptions not relevant here, apparently no one may practice in the hospital unless he is a member of the medical staff.

Thomas Wyatt applied for membership to the staff. His application was rejected by the board of directors. He then sought a hearing. It too was denied, and he brought this action which was decided adversely to him by the trial court.

Appellant contends that as a licensed physician and surgeon he is entitled to practice his profession in a public hospital and that he was entitled to a hearing before the board on his application for membership.

The question whether or not a licensed physician and surgeon is entitled to practice his profession in a public hospital by virtue solely of his being such licentiate is one of first impression in this state. Diverse conclusions have been reached in other jurisdictions in which the question has been considered. It is stated in 26 American Jurisprudence, Hospitals and Asylums, section 9 (1959 Supp.), that "It is generally agreed that the managing authorities of a hospital, under the power to adopt reasonable rules and regulations for the government and operation thereof, may, in the absence of any statutory restriction, prescribe the qualifications of physicians or surgeons for admission to practice therein. This rule has been held or declared applicable in the case of both public and private institutions. And the decisions are generally to the effect that the managing authorities of a hospital, in the absence of any inhibiting statute or bylaw, may adopt and enforce reasonable regulations in respect of the qualifications of practitioners to engage in particular kinds of practice or to perform particular kinds of operations, and also in respect of the conditions under which operations or particular kinds of operations or other services may be performed. . . . And it is generally recognized that a practitioner cannot complain of his exclusion from a public hospital by the operation of reasonable rules and regulations adopted for the government thereof.

But one cannot be deprived of the right or privilege to practice in a public hospital by rules, regulations, or acts of its governing authorities which are unreasonable, arbitrary, capricious, or discriminatory. And in some jurisdictions, the rule is that a regularly licensed physician or surgeon has a right to practice in the public hospitals of the state so long as he stays within the law, and conforms to all reasonable rules and regulations of the institutions.'' (See also 24 A.L.R.2d 855.)

If the statute did not authorize the board of directors of a hospital formed under ''The Local Hospital District Law'' to make rules and regulations limiting staff membership to physicians and surgeons competent in their respective fields, worthy in character and in professional ethics, we would hold that the appellant would be entitled to practice in a public hospital so long as he stayed within the law and conformed to all reasonable rules and regulations of the hospital; but to so hold would make meaningless that portion of the statute previously cited. ■ We think that it is clear that a licensed physician and surgeon does not have the right *per se* to practice in a public hospital, but that right is subject to reasonable rules and regulations. (*Hayman* v. *Galveston*, 273 U.S. 414 [47 S.Ct. 363, 71 L.Ed. 714].) ■ However, we do not believe that a licensed physician or surgeon whose license to practice is unrevoked and who is in good standing can be denied the right to practice in a public hospital merely because of past conduct which made him subject to disciplinary action by the Board of Medical Examiners. If he is to be excluded it must be for existing cause. ■ ''[T]he nature of a public hospital imposes an actual, although implied, limitation upon the authority of respondent to restrict arbitrarily the use of the hospital by the public, whether physician or patient.'' (*Alpert* v. *Board of Governors*, 286 App.Div. 542 [145 N.Y.S.2d 534, 538].)

■ In the instant case the record, largely hearsay, disclosed that the appellant has been guilty of improper conduct in the past. The test to be applied by the board of directors of a public hospital is not a licensee's wrongful conduct in the past but whether or not at the time of his application for staff membership he is competent in his field, worthy in character and professional ethics. The Board of Medical Examiners, after disciplinary action, has determined that the petitioner should be permitted to practice in this state. There is

nothing in the record to show improper conduct on appellant's part since the time he was disciplined. Without such evidence it would seem that his exclusion was arbitrary.

■ It should also be noted that the rule of respondent hospital which sets up the standard for admission to the staff, namely, that only physicians and surgeons whose background, experience, and training insures in the judgment of the board that any patient will be given the best possible care, is too vague and uncertain to be used as the basis for the exclusion of an applicant. What is the best possible care and professional skill? Would it limit the practice of medicine in the Tahoe District Hospital to physicians and surgeons who are recognized authorities in their respective fields? By what standards do the directors who are all lay individuals determine what is the best possible care and professional skill? The standard set up is such that admission to the staff can depend on the whim and caprice of the directors. ■ A hospital district in the exercise of its duty to prescribe reasonable rules and regulations must set up standards or qualifications for those who wish to serve in the hospital which are general but not arbitrary or discriminatory. These should be clear, not vague, ambiguous or uncertain. (*Jacobs* v. *Martin,* 20 N.J. Super. 531 [90 A.2d 151].) The rule enacted by the board of directors of respondent hospital does not meet this test and as such may not be used to exclude appellant.

Appellant also contends that he was entitled to a hearing on his application. We must agree with this contention. ■ It is common knowledge that a physician or surgeon who is not permitted to practice his profession in a hospital is as a practical matter denied the right to fully practice his profession. In this day of advanced medical knowledge and advanced diagnostic techniques much of what a physician or surgeon must do can only be performed in a hospital. In many instances only a hospital has the facilities necessary for proper diagnosis or treatment. ■ The hospital district act empowers the board of directors to make rules and regulations for the administration of the hospital including provisions that membership on the staff be restricted to physicians and surgeons competent in their respective fields, worthy in character and professional ethics. By the terms of the statute a physician or surgeon must be first admitted to membership on the staff before he can practice in the hospital. In effect, a special license must be obtained before he may so practice,

It is the general rule that where a board is empowered to ascertain facts on which may depend the right to engage in the practice of a profession, the board in exercising such power performs a quasi-judicial function. (*Weiss* v. *State Board of Equalization,* 40 Cal.2d 772 [256 P.2d 1].) In making its decision the board must act fairly and its decision must be based on sufficient evidence. It cannot act arbitrarily. (*Martin* v. *Board of Supervisors,* 135 Cal.App. 96 [26 P.2d 843].) The applicant has the right to a hearing to determine whether or not his qualifications meet the requirements established by law. (*Andrews* v. *State Board of Registration,* 123 Cal. App.2d 685 [267 P.2d 352] ; *Martin, supra.*) While the rules enunciated were expounded in cases involving licenses, we think that the rules set forth are appropriate to the instant case and should be applied to cases involving public hospitals. We conclude that it was error for the board of directors to have refused appellant a hearing.

The judgment is reversed. The trial court is instructed to issue its order compelling the board of directors of the Tahoe Forest District Hospital to set aside its order denying appellant's application for membership to the staff of the hospital and to grant him a hearing on his application in accordance with the views expressed herein.

Van Dyke, P. J., and Peek, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 17, 1959. Spence, J., McComb, J., and White, J., were of the opinion that the petition should be granted.