[Civ. No. 32791. First Dist., Div. Two. Feb. 24, 1975.]

STANFORD W. ASCHERMAN, Plaintiff and Appellant, v.
SAINT FRANCIS MEMORIAL HOSPITAL et al., Defendants and
Respondents.

**COUNSEL**

Jerome Berg for Plaintiff and Appellant.

Chickering & Gregory, John Philip Coghlan, William L. Ferdon and Walter M. Frank for Defendants and Respondents.

**OPINION**

**TAYLOR, P. J.**—Plaintiff, a licensed and practicing physician, appeals from a judgment denying his petition for a writ of mandate to compel the respondent, Saint Francis Memorial Hospital, to consider his application for staff privileges. He contends that the trial court erred in upholding a by-law which permits summary rejection of an application

for staff membership, without a right to hearing, solely on the basis that such application fails to include three letters of reference from active members of the hospital staff. On the basis of *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253], and *Ascherman* v. *San Francisco Medical Society*, 39 Cal.App.3d 623 [114 Cal.Rptr. 681], we have concluded that his contention is well taken and that the judgment must be reversed.

The court found the pertinent facts as follows: The hospital is a privately owned medical hospital and not a public entity but is the recipient of funds made available under the Hill-Burton Act.[1] On August 20, 1970, the physician submitted an application for admission to the medical staff. His application was returned without consideration for the sole reason that it did not have three letters[2] from members of the hospital's active staff as required by its applicable by-law (set forth in full below).[3]

The physician has been practicing in San Francisco since 1959 and has a busy practice, with about 50 percent of his patients treated in hospitals in San Mateo County. He enjoys full staff privileges at one hospital in San Francisco, and three others located respectively in Redwood City, Burlingame and San Mateo. He was formerly a staff member of the recently closed Callison Memorial Hospital in San Francisco, and currently has an application pending for admittance to another San Francisco hospital. He estimated that in 1970, his gross annual income was $80,000-$90,000 and made no showing of a substantial, significant or irreparable injury to his practice as the result of his inability to use the hospital. On the contrary, he admitted that his purpose in making the application was to find a hospital a little closer to his home office in order to make life a bit easier for himself.

---

[1]Pursuant to the Hill-Burton Act, 42 United States Code Annotated section 291, the federal government makes grants to public and private hospitals for construction costs.

[2]The hospital received 22 letters of reference from physicians who were not on its staff.

[3]Article III, section 4(a) of the hospital's by-laws provides: "Application for original membership on the Medical Staff shall be presented to the Medical Advisory Board in writing, on the prescribed form which shall state the qualifications and references of the applicant, and shall recite facts to show that the applicant possesses the qualifications specified in Section 2 of Article III hereof, and such other information as may be required from time to time by the Medical Advisory Board. The applicant shall also signify his agreement to abide by the By-Laws, Rules and Regulations of the medical Staff, and to the California Medical Association Guiding Principles for Physician-Hospital Relationships. The application shall be signed by the applicant. *Three members of the Active Staff must submit letters of reference on behalf of the applicant.* No member of the Board of Trustees shall sponsor an applicant for Medical Staff membership. If acceptable for membership, the applicant shall show evidence that he has obtained malpractice insurance in amounts sufficient to meet the minimum requirements of the Board of Trustees." (Italics supplied.)

As to the by-law here in question, the court found in accord with the allegations of the answer that the hospital reasonably relies upon the authors of the letters of reference submitted pursuant to the by-law provision in question for vital information concerning an applicant, including but not limited to information regarding his character, reputation, skill and ability to work with others. The hospital does not have a power of subpoena over persons writing letters of reference regarding an applicant, nor any other such similar power, and must rely upon the candor of the authors of the letters of reference for information vital to consideration of an applicant. Members of the active medical staff of the hospital may be expected to and will exercise much more care and exhibit far more concern than nonmembers over applicants for membership to the medical staff. These active staff members may be expected to be and will be more candid and cooperative than nonmembers as to applicants since sensitive topics are at issue in the consideration of applications.

The court also found that the purpose and intent of the by-law provision and the purpose and intent of the hospital in adopting it was reasonable for the protection of the hospital, its medical staff and patients, as well as specifically to ensure and obtain vital information regarding applicants for membership to the medical staff. The hospital had a valid and substantial interest in acquiring knowledge concerning the background of an applicant, and specifically information regarding his character, reputation, skill, and ability to work with others.

The court concluded that as a private institution, the hospital was free to establish its own rules, regulations and qualifications for medical staff membership, so long as these were not unreasonable or applied in a discriminatory manner, and that the by-law in question was not unreasonable and had not been applied in a discriminatory manner.

The physician's main contention on appeal is that respondent is a "public" institution and, therefore, cannot have a by-law like the one in issue that arbitrarily and unreasonably restricts staff memberships. Neither the parties nor the court below had the benefit of our state Supreme Court's recent decision in *Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* hereafter *Pinsker II.*

*Pinsker II* flowed from the court's earlier holding that an applicant for membership in a professional society had a judicially enforceable right to have his application considered in a manner comporting with the

fundamentals of due process (*Pinsker* v. *Pacific Coast Soc. of Orthodontists,* 1 Cal.3d 160, 166 [81 Cal.Rptr. 623, 460 P.2d 495], hereafter *Pinsker I*).

In *Pinsker II,* the state Supreme Court cited *Martino* v. *Concord Community Hosp. Dist.,* 233 Cal.App.2d 51 [43 Cal.Rptr. 255], and *Wyatt* v. *Tahoe Forest Hospital Dist.,* 174 Cal.App.2d 709 [345 P.2d 93], to hold (at p. 554) that because of the fiduciary responsibilities arising out of "public service" functions, membership decisions of professional associations, like those of the hospital staffs involved in *Martino* and *Wyatt, supra,* must be rendered pursuant to minimal requisites of fair procedures required by established common law principles.[4] The court specifically noted (fn. 12, p. 554) that while the defendants in both Wyatt and Martino were public entities, neither decision relied on this factor but on the fact that denial of membership would effectively impair the applicant's right "to fully practice his profession," citing *Wyatt* and *Rosner* v. *Eden Township Hospital Dist.,* 58 Cal.2d 592, 598 [25 Cal.Rptr. 551, 375 P.2d 431].

■ Before applying the test of *Pinsker II* to the instant case, we must deal with the question of whether here, as in *Pinsker,* denial of membership would effectively impair the physician's right "to fully practice his profession." Although the trial court found that the physician had made no showing of "economic necessity" here, *Pinsker I* indicates that "economic necessity" for membership is not the criterion. As to the trial court's finding that other San Francisco hospitals were available, this court (Division One) recently indicated in *Ascherman* v. *San Francisco Medical Society,* 39 Cal.App.3d 623, footnote 9 at page 650 [114 Cal.Rptr. 681], (approved in *Pinsker II,* fn. 8, pp. 550-551), the mere existence of other hospitals may not be a sufficient safety valve to prevent deprivation of substantial economic advantage with the advent of comprehensive health planning. We conclude, therefore, that denial of staff membership would effectively impair the physician's right to fully practice his profession. In *Pinsker II,* the court also relied on its decision in *Willis* v. *Santa Ana etc. Hospital Assn.,* 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568], which held that private hospitals are under the same constraints as public ones to protect against arbitrary exclusion from membership. The court said at page 550: ". . . whenever a private association is legally required to refrain from arbitrary action, the association's action must be both substantively rational and procedurally

---

[4]The court indicated (fn. 7, p. 550) that since the decision was based on common law rather than constitutional principles, the appropriate language was "fair procedure" rather than "due process."

fair." The court then rejected an argument that procedural fairness was restricted to expulsion cases and concluded that a fair procedure requires that before the denial of an application, an applicant be notified of the reason for the rejection and given a fair opportunity to defend himself.

We turn, therefore, to the question of whether the by-law here in question was substantially rational and procedurally fair. Article II, section 1 of the hospital by-laws provided that its purpose was: "To insure that all patients admitted to the hospital or treated in the out-patient department, receive the best possible care."

The trial court found that, because of the greater frankness to be expected from staff members than nonmembers, there was a rational connection between the endorsement by staff members and the assurance of professional and ethical qualifications of the physicians for the common good of the hospital and its patients. While we may not quarrel with that proposition in the abstract, we do not agree that such "rational connection" is sufficient to permit rejection of one's application for staff membership solely because of his failure to procure such endorsements without a concurrent right in the applicant to challenge such summary action by an appropriate consideration and hearing as to his actual qualifications. For one thing, there is too great a danger that the necessary endorsements may be arbitrarily and discriminatorily withheld. Precisely because of this threshold exclusion effect of the by-law, we think the instant situation requires criteria analogous to the constitutional ones used for "public hospitals." We are supported in this conclusion by the federal cases holding that, when a private hospital accepts federal funds for construction or operation, discrimination against physicians may constitute a violation of the Fourteenth Amendment (see *Sams* v. *Ohio Valley General Hospital Association* (4th Cir. 1969) 413 F.2d 826, 828-830; and *Citta* v. *Delaware Valley Hospital* (E.D. Pa. 1970) 313 F.Supp. 301, 306-310; and note, *Eaton* v. *Grubbs* (4th Cir. 1964) 329 F.2d 710, 713-715; and *Simkins* v. *Moses H. Cone Memorial Hospital* (4th Cir. 1963) 323 F.2d 959-969, cert. den. (1964) 376 U.S. 938 [11 L.Ed.2d 659, 84 S.Ct. 793]). In addition, our Supreme Court's holding in *Pinsker II* approved the elimination of the public/private distinction along the lines used by this court in *Ascherman* v. *San Francisco Medical Society,* 39 Cal.App.3d 623, 645 [114 Cal.Rptr. 681], quoted with approval from *Silver* v. *Castle Memorial Hospital* (1972) 53 Hawaii 475 [497 P.2d 564] (cert. den. (1972) 409 U.S. 1048 [34 L.Ed.2d 500, 93 S.Ct. 517], and rehg. den. (1973) 409 U.S. 1131 [35 L.Ed.2d 264, 93 S.Ct. 936]) as follows: "There the court, although acknowledging that the hospital involved had more than a nominal governmental involvement in

the form of funding, noted: '. . . if the proposition that any hospital occupies a fiduciary trust relationship between itself, its staff and the public it seeks to serve is accepted, then the rationale for any distinction between public, "quasi public" and truly private breaks down and becomes meaningless, especially if the hospital's patients are considered to be of primary concern.' (53 Hawaii at p. 482 [497 P.2d at p. 570].)"

In *Ascherman, supra,* this court (Division One) also reviewed the criteria established by the Legislature, pursuant to the Local Hospital District Law (Health & Saf. Code, div. 23, § 32000 et seq.), as well as the recent additions to the Business and Professions Code, and concluded that ". . . the Legislature intended private hospitals to be governed by *the same criteria as public hospitals.*" (Italics added.)

By-law provisions, substantially identical to that here in issue, were rejected in *Foster* v. *Mobile County Hospital Board,* 398 F.2d 227, and *Hamilton County Hospital* v. *Andrews* (1949) 227 Ind. 217 [84 N.E.2d 469]. The Indiana court said at page 472: "The present rules, however, provide that the hospital can appoint new members to its staff only upon recommendation of its staff. It would seem by this rule, recommendation to membership may be rejected by the board, but that no one shall be made a member of the staff without such recommendation. This is an unreasonable requirement, . . ."

The trial court's reasoning overlooked this aspect of the by-law as its conclusion of rationality was based on the potential use of the letters from staff members in relation to an application considered on its merits, "regarding his character, reputation, skill and ability to work with others."[5]

The by-law has the inherent grave danger that members of the active staff may seek to exclude certain applicants because they are of a certain race, religion, ancestry, because they have testified against them in malpractice suits, or simply because they do not like them; or what if an applicant simply does not know three members of the staff of a particular hospital whose facilities he needs to practice his profession?

The hospital relies on *Kronen* v. *Pacific Coast Society of Orthodontists,* 237 Cal.App.2d 289 [46 Cal.Rptr. 808], decided by this court (Division

[5]As to this finding, we note that in *Rosner* v. *Eden Township Hospital Dist.,* 58 Cal.2d 592, at page 599 [25 Cal.Rptr. 551, 375 P.2d 431], our Supreme Court held that inability to get along with some doctors or hospital personnel was not a sufficient ground for exclusion as to a "public" hospital.

One) in 1965. In that case, two sponsors of the plaintiff, who had originally recommended him for membership in a professional society, for reasons set forth in the record, withdrew their recommendations from this second application. The court held that the plaintiff was entitled to judicial review as to whether this withdrawal was arbitrary or wrongfully accomplished, and on the basis of the evidence in the record, affirmed the trial court's conclusion that there had been no wrongful or arbitrary withdrawal. *Kronen* was subsequently cited with approval, as a basis for the decision in *Pinsker I. Kronen,* however, unlike the instant case, did not involve a threshold rejection without a consideration of the application on its merits.

Even assuming substantive rationality here, the effect of the by-law was to prevent the physician's application from being considered and rejected. Thus, he never had the benefit of article III, section 7 of the by-laws which provides for hearing procedures for rejected applications.[6] While the physician was notified of the reason for the hospital's refusal to consider his application (the failure to have the requisite number of letters from staff members), he was not given a fair opportunity to defend himself. The fact that the physician was able to obtain a large number of letters from physicians not on the active staff of the hospital would indicate that he might well have met the required professional qualifications for staff membership.

We conclude that the by-law in the instant case that served to preclude consideration of the physician's application also violated the minimal common law standards of a fair procedure.

The judgment is reversed and the trial court is directed to issue an injunction compelling the hospital to reconsider the application pursuant to a fair procedure, as outlined in *Pinsker II.*

Rouse, J., concurred.

KANE, J., Concurring and Dissenting.—For reasons which shall appear, I agree that a remand to the trial court is appropriate. I cannot, however, subscribe to the conclusion that the questioned by-law is either unreasonable per se or violative of "minimal common law standards of a fair

---

[6]Respondents' attorney conceded, and in fact adamantly contended at oral argument, that article III, section 7 was inapplicable where an application was never received for processing because of the physician's failure to obtain the three required letters from staff members pursuant to article III, section 4(a). We agree that a reading of the entirety of article III clearly confirms the propriety of this contention.

procedure." On the contrary, in my opinion the requirement of obtaining letters of reference from three members of the active staff is entirely reasonable and sensible, is rationally connected to the essential and critical purposes of a professional and ethical private hospital and does no violence whatever to standards of fair procedure. I therefore respectfully dissent.

The majority bootstraps its contrary conclusion by means of indulging in rank speculation, viz: "There is too great a danger that the necessary endorsements *may* be arbitrarily and discrimatorily withheld." And later: "The by-law has the inherent grave danger that members of the active staff *may* seek to exclude certain applicants because they are of a certain race, religion, ancestry, because they have testified against them in malpractice suits, or simply because they do not like them;" (italics added).

There is absolutely no evidence whatever in this record to suggest that any such "inherent grave danger" has actually occurred, or that it is reasonably likely to occur. Indeed, plaintiff makes no allegation that his claimed inability to obtain the necessary recommendations is due to any such arbitrary or discriminatory motivation.

Bearing in mind that we are dealing with common law—not constitutional—standards of "fair procedure" (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550, fn. 7 [116 Cal.Rptr. 245, 526 P.2d 253]), we should not allow our decision to be formulated by "due process" considerations which are not only inapplicable (*Pinsker II,* p. 550, fn. 7, *supra*) but, in my opinion, inappropriate to the situation and the parties at bench.

First of all there can be no dispute with the fact that a private hospital, the purpose of which is to insure that all patients admitted—or treated—receive the best possible care, is free to establish its own rules, regulations and qualifications for medical staff membership, so long as they are not unreasonable or applied in a discriminatory manner. Here, defendants' own by-laws contained such an expression of purpose, and the trial court found that a rational connection exists between the endorsement of staff members and the insurance of professional and ethical qualifications of the physicians for the common good of the hospital and its patients. That finding, in my view, is conclusively persuasive.

At a time when the standards of professional conduct and service are subject to aggressive consumer assault and when hospitals and physicians are exposed to increasing horizons of liability—often predicated upon principles of vicarious or imputed liability—courts should not unduly interfere with the legitimate and ostensible good-faith efforts of private hospitals and physicians to protect themselves.

No enterprise is more important than one which undertakes the responsibility of rendering medical care to the sick, sore, lame, and disabled members of society. It seems to me to be patently elementary that in order to discharge such an onerous and awesome duty, the hospital should be clothed with broad discretionary authority to establish reasonable standards for staff admission.

The majority's concern that the necessary endorsements *may* be withheld is premised on the erroneous assumption that an applicant such as appellant is left entirely without a remedy in the event he is unable to obtain the three letters of recommendation.

Thus, the majority asserts that "he was not given a fair opportunity to defend himself." But the record shows without contradiction that the by-laws of defendants *do* provide for a hearing.[1]

Thus, article III, section 7 (a), in pertinent part provides: "In all cases in which any applicant has been denied membership, the applicant shall be notified promptly by registered or certified mail. He may, within 30 days of receipt of notice of such denial, request in writing a hearing by the Medical Advisory Board and such hearing shall be held within 60 days after receipt of the request. . . . Failure to request a hearing after the prescribed time constitutes a waiver of the applicant's right to a hearing."

Admittedly, defendants failed to give written notice *that plaintiff was entitled to request a hearing.* In my opinion it should have done so. At the same time, the concept of common law standards of fair procedure should not be traveled on a one-way street. Plaintiff makes no showing —not even an allegation—that he ever requested a hearing of any kind. In my opinion, he should have done so.

Although it may be argued that since the application here was

---

[1] In addition, and independently of the by-laws, appellant is now entitled to a hearing under the holding of *Pinsker II,* a case which the majority correctly notes was decided *after* the proceedings in the court below. It is clear to me, therefore, that respondent's by-laws providing for a hearing procedure in all cases is simply an express recognition of the procedural right later articulated by the court in *Pinsker II.*

"returned" rather than "denied," that the hearing by-law quoted above does not apply, I find such a contention to be altogether technical, substituting form for substance. The gravamen of plaintiff's dispute is (as was conceded at oral argument before this court) simply that plaintiff has been denied the right to staff privileges at defendant hospital. As can be seen from even a cursory reading of article III, section 7(a), the provision for a hearing is all inclusive and applies "In *all* cases . . ." (italics added).

In my view, the solution to the instant controversy is a simple one and the facts of this case do not warrant the far-reaching consequences of the majority's holding, i.e., that a by-law requirement such as here contested is violative of minimal common law standards of fair procedure.

If, in fact, plaintiff's inability to obtain the necessary three signatures of active staff members is due to some discriminatory factor, such evidence can be acquired and established in the hearing permitted by defendants' by-laws. If plaintiff's application is then denied, he has the clear right of judicial review (*Kronen* v. *Pacific Coast Society of Orthodontists* (1965) 237 Cal.App.2d 289 [46 Cal.Rptr. 808]).

In a further effort to support its position that the by-law provision is unlawful per se, the majority pose this question: "what if an applicant simply does not know three members of the staff . . .?"

The short answer is that he should take steps to get acquainted with those physicians. One would be hopelessly naive to conclude that this would be an onerous or unreasonable burden for a physician to bear. In the case at bench, for example, as the majority points out, plaintiff has been practicing in San Francisco since 1959, and did submit a large number of letters from other physicians. To suggest that Doctor Ascherman will be unable to comply with the by-law because he does not know—and cannot reasonably be expected to arrange to meet—the active staff members simply overlooks the realities and practicalities of professional life which are matters of such common knowledge that a court should not hesitate to acknowledge them promptly.

Finally, I do not believe that either *Pinsker II* or *Ascherman* v. *San Francisco Medical Society* (1974) 39 Cal.App.3d 623 [114 Cal.Rptr. 681] compel the conclusion that the by-law in question is unreasonable on its face.

Each of these cases is distinguishable from the case at bench. *Pinsker II,* for example, involved membership in a professional association, as contrasted with admission to hospital staff privileges. The core of the holding in *Pinsker II,* as I read it, is that Dr. Pinsker was denied membership (1) without being notified of the reason for the rejection and (2) without being given a fair hearing "to defend himself." In the case at bench Dr. Ascherman was notified of the reason for his rejection. Thus, the only defect in the procedure below is the absence of a hearing neither requested by plaintiff nor offered by defendants.

*Ascherman* v. *San Francisco Medical Society, supra,* does not stand for the proposition that a hospital by-law requiring recommendation by active staff members is inherently violative of due process, or even of common law principles of fair procedure. In that case, the trial court instructed the jury that hospitals were *not* required to afford the plaintiff a hearing at all in connection with a denial of, or expulsion from, staff privileges. Needless to say, that is clearly contrary to established law. In addition, as I have pointed out before, not only is plaintiff entitled to such a hearing in this case by operation of law, but defendants' own by-laws explicitly provide for it.

I would therefore reverse the judgment with directions to the trial court to issue an injunction ordering defendants to advise plaintiff of his right to request a hearing in accordance with article III, section 7 (a), of defendants' by-laws and, upon receipt of a timely request for such hearing from plaintiff, to consider the matter pursuant to a fair procedure as described in *Pinsker II.*