[Civ. No. 22878.   First Dist., Div. Three.   Mar. 30, 1966.]

THE SPERRY AND HUTCHINSON COMPANY, Plaintiff and Respondent, v. CALIFORNIA STATE BOARD OF PHARMACY et al., Defendants and Appellants.

230

Thomas C. Lynch, Attorney General, and Gerald F. Carreras, Deputy Attorney General, for Defendants and Appellants.

W. Burleigh Pattee, Bruce M. Casey, Jr., and Chickering & Gregory for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal from a judgment on the pleadings. The respondent, Sperry and Hutchinson Company, commenced the action by filing a complaint seeking both declaratory relief and an injunction.[1] Appellants' demurrer to the complaint was overruled. Appellants filed an answer and a cross-complaint seeking injunctive relief against re-

---

[1]The complaint named as defendants the California State Board of Pharmacy, its executive secretary, and individuals who were then members of the board.

spondent. A demurrer to the cross-complaint was sustained without leave to amend. Respondent's motion for judgment on the pleadings was granted.

The parties agree that the decisive issue on appeal is the validity of a 1962 amendment to the board's regulation 1765, which prohibits the giving of trading stamps by pharmacists on purchase of prescription drugs. If that amendment is invalid on any ground urged, then the judgment must be affirmed. As will appear, we have concluded that the amendment is invalid upon at least one ground relied upon by respondent, and for that reason, affirm the judgment.

Respondent is in the business of licensing retail merchants, including pharmacists, in a plan which it calls its "Co-Operative Cash Discount" system. It involves the sale to merchants of the widely known "S & H green stamps"; advertising of the fact that particular merchants give such stamps with cash purchases, and maintenance of redemption facilities for redemption of stamps in cash or merchandise. It is alleged and not denied that at the time appellants adopted the amendment to regulation 1765 respondent had in effect more than 900 contracts with California pharmacists who had agreed to buy and issue S & H stamps.

Regulation 1765, adopted by appellant State Board of Pharmacy, appears as Title 16, California Administrative Code.[2] As originally adopted, the regulation made no reference to the giving of trading stamps by pharmacists. When the board proposed to amend the regulation to prohibit pharmacists from giving trading stamps it held a hearing on its proposal. Respondent appeared at the hearing and objected to the amendment, but the board nevertheless adopted it. Respondent then instituted this action to prevent the board from enforcing the amended regulation.

Appellants' first major point on appeal is that the complaint failed to state a cause of action, and it was therefore error to overrule its demurrer. Appellants contend that respondent has no sufficient interest to permit it to maintain this action. Appellants point out that respondent is not subject to the regulation; that the board can take no disciplinary action against it or impose any sanctions upon it. Appellants cite and

[2]"No pharmacist shall give any trading stamps, commission, gratuity or rebate in any manner or form whatever on any fees for professional services rendered to a patient of a person licensed under Division 2 of the Business and Professions Code."

rely upon such cases as *Associated Boat Industries* v. *Marshall*, 104 Cal.App.2d 21 [230 P.2d 379]; *Parker* v. *Bowron*, 40 Cal.2d 344 [254 P.2d 6]; *Funeral Directors Assn.* v. *Board of Funeral Directors & Embalmers*, 67 Cal.App.2d 311 [154 P.2d 39], and *Ex-Cell-O Corp.* v. *Chicago*, 115 F.2d 627. But most, if not all, of the cases cited by appellants are readily distinguishable from our case, or are not controlling upon us. Thus in the *Associated Boat* case the plaintiff was merely a trade association having no financial interest in the outcome of the controversy described in the complaint. The same is true of the *Funeral Directors* case. In the *Parker* case, the plaintiff sought a writ of mandate to compel city officials to fix a salary or wage for all city employees in certain classifications, but the plaintiff did not plead that he was an employee of the city, a resident or taxpayer therein, or that he would benefit if salaries were fixed as demanded, or suffer if relief was denied. The court properly held that the plaintiff had no standing to sue.

Appellants place great emphasis upon *Ex-Cell-O Corp.* v. *Chicago, supra*, 115 F.2d 627. In that case one plaintiff was a manufacturer of machines for the production of paper milk containers. A second plaintiff was a manufacturer of paper milk containers sold to dairies in the City of Chicago. In their action they sought to have the court declare that a certain ordinance of the city did not prohibit the use of paper milk containers, or if it did, that it was invalid. The court agreed that the plaintiffs had a pecuniary interest in the interpretation of the ordinance but concluded that the interest of both plaintiffs was remote and indirect and that they therefore had no standing to sue. Relief was denied.

The *Ex-Cell-O* case, however, has its critics. It has been described as harsh and questionable. (See Borchard, Declaratory Judgments, 2d ed. 1941, pp. 50, 53.) In *Joint Anti-Fascist Refugee Committee* v. *Clark*, 177 F.2d 79 and *International Workers Order* v. *McGrath*, 182 F.2d 368, the lower court cited and relied upon the *Ex-Cell-O* case, but in *Joint Anti-Fascist Refugee Committee* v. *McGrath*, 341 U.S. 123 [71 S.Ct. 624, 95 L.Ed. 817] both of these decisions were reversed. It is true that some courts have cited *Ex-Cell-O* with approval (see *Beauty Hall, Inc.* v. *State Board of Cosmetology*, 418 Pa. 225 [210 A.2d 495]) but we are not compelled to apply its rule here.

It seems clear to us that respondent is an "interested

person" within the meaning of Government Code section 11440,[3] as well as Code of Civil Procedure section 1060, and hence has standing to maintain this action. Respondent's interest in the application of amended regulation 1765 is obvious and direct. It sells trading stamps to retail merchants. It has over 900 contracts with pharmacists in this state for the purchase of its product. If the amended regulation is enforced, respondent will effectively be deprived of the benefit and profit to be derived from such contracts. It seems idle to contend, as appellants seem to do, that the regulation in no way interferes with respondent's right to *sell* its trading stamps, even to pharmacists—that all that is prohibited here is the mere *giving* of the stamps by pharmacists. This argument is based in part upon the reasoning advanced in the *Ex-Cell-O* case. We cannot accept this view. Applied here, the reasoning in *Ex-Cell-O* would destroy a large segment of respondent's business while in form seeming to preserve it. We believe the allegations of respondent's complaint show that it is directly affected by the board's regulation, and hence that respondent has standing to challenge its validity. (See *Chas. L. Harney, Inc.* v. *Contractors' State License Board,* 39 Cal.2d 561, 564 [247 P.2d 913]; Annotation, "Interest necessary to maintenance of declaratory determination of validity of statute or ordinance," 174 A.L.R. 549.)

Appellants also attack the complaint on the ground that its allegations demonstrate that respondent's trading stamps represent a cash discount and that Business and Professions Code section 651 prohibits licensed pharmacists from offering to sell or render any service upon a representation that the commodity or service is at a discount from the average fee or price then regularly charged by licensees or other persons. Thus, appellants argue, the complaint attempts to sanction violation of a penal statute, and hence states no cause of action. But as will appear, section 651 must be read in the light of later enacted Business and Professions Code section 17780,[4] which section repeals all laws and parts of laws

[3] "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure. . . ."

[4] "All laws and parts of laws now effective in this State, to the extent that they directly or indirectly regulate trading stamp companies, or directly or indirectly regulate the distribution or redemption of trading stamps in this State, are hereby repealed; provided, however, that this chapter shall not repeal nor be construed to repeal Chapters 16 (commenc-

directly or indirectly regulating the distribution of trading stamps in this state, with exceptions therein noted.

In the trial court respondent contended that the board's amendment to regulation 1765 was invalid on four grounds. The court upheld all of these objections and based its judgment and injunction upon each of them. As we have previously said, at least one of respondent's points is well taken and requires us to affirm the judgment. Since this is so, it becomes unnecessary to discuss other contentions of the parties with respect to the validity of the amendment.

In support of its motion for judgment on the pleadings respondent correctly argued that the Legislature has preempted the field of trading stamp regulation, and hence the attempted regulation of that activity by appellants is invalid.

In 1959 the Legislature added chapter 3 to division 7, part 3 of the Business and Professions Code. This chapter contains sections 17750 through 17780. The result of these sections is to regulate the activities of trading stamp companies, including the issuance and redemption of trading stamps. Section 17780 repeals all laws and parts of laws now effective in this state, to the extent that they ". . . directly or indirectly regulate the distribution or redemption. . . ." of trading stamps. This language, it appears to us, precludes appellants' attempted administrative regulation prohibiting its licensees from distributing trading stamps.

Appellants seek to justify the amendment to the regulation by reference to Business and Professions Code sections 4008 and 4008.2.[5]   Section 4008 grants the board authority to make rules and regulations relating to the practice of

ing at Section 4100) and 17 (commencing at Section 4200) of Division 6 of the Agricultural Code, Chapters 10 (commencing at 24750), 11 (commencing at Section 24850), 12 (commencing at Section 25000), and 16 (commencing at Section 25600) of Division 9 of the Business and Professions Code, or any provisions of any of such chapters.''

[5] ''4008. The board may make such rules and regulations, not inconsistent with the laws of this State as may be necessary for the protection of the public. Included therein shall be the right to make rules and regulations as follows: For the proper and more effective enforcement and administration of this chapter; pertaining to the practice of pharmacy; regulating the sale of poisons; relating to the sanitation of persons and establishments licensed under the provisions of this chapter; pertaining to establishments wherein any drug is compounded, prepared or sold; providing for standards of minimum equipment of establishments licensed under the provisions of this chapter; pertaining to the sale of drugs by or through any mechanical device.''

''4008.2. The board may by rule or regulation adopt, amend, or repeal rules of professional conduct appropriate to the establishment and mainte-

pharmacy ". . . not inconsistent with the laws of this State. . . ." But sections 4008 and 4008.2 must be read in the light of section 17780. When this is done it is apparent that section 17780 relieves the appellant board of any power it may have had previously under sections 4008 and 4008.2 to regulate the issuance of trading stamps by pharmacists. Section 17780 is a later enactment than either section 4008 or 4008.2 and specifically treats the subject of trading stamp companies and the issuance and redemption of trading stamps. It was clearly intended to occupy the legislative field on that subject, to the exclusion of any powers granted to appellants, either expressly or by implication.

What we have said here has equal application to Business and Professions Code section 651, which we have previously mentioned. That section too must bow to the declared policy of section 17780. ▇▇▇ Section 651 cannot be read so as to prohibit the issuance of trading stamps by a pharmacist because, to the extent that it might be given such interpretation, it has been modified by the express provisions of section 17780.

It would appear that when the Legislature enacted section 17780 it had in mind other provisions of law where the issuance of trading stamps might be prohibited. The statute makes reference to and specifically exempts from its effect, those sections of the Agricultural Code relating to the marketing of milk and the prohibition of rebates and discounts, as well as those provisions of the Business and Professions Code relating to the sale of alcoholic beverages and prohibiting the giving of gifts and premiums by licensees. As to these products the legislative intent is clear. It intended to and did leave such laws untouched. But the basic legislative intent is equally clear from the unambiguous language used in the section, and that intent was simply to repeal all laws in conflict with the Legislature's own standards concerning the regulation of trading stamp companies and the distribution and redemption of trading stamps, with the exceptions noted.

▇▇▇ We are not persuaded by appellants' further contention that section 17780 must be applied in a purely retro-

nance of a high standard of integrity and dignity in the profession. The adoption, amendment or repeal of such rules or regulations shall be made in accordance with the provisions of Chapter 4 (commencing at Section 11370) of Part 1 of Division 3 of Title 2 of the Government Code. Every person who holds a certificate or permit to practice pharmacy in this State shall be governed and controlled by the rules of professional conduct adopted by the board."

spective manner and hence appellants' regulation, later adopted, must be held valid. This contention, if upheld, would nullify section 17780 and frustrate the legislative intent. Under this view, if correct, any and all administrative regulations struck down by the enactment could promptly be revived by the administrative authority. Thus the agent would become the master, and the master's word would be meaningless. We do not read the statute in this manner.

In one respect, however, appellants' demurrer to the complaint should have been sustained. The complaint names as parties defendant the California State Board of Pharmacy, Floyd M. Heffron, as executive secretary, and the individual members of the board. It is clear that the first four causes of action stated relate to official action of the board in which the named individuals participated only in their official capacity. Official and not personal action is the gravamen of the complaint. Thus it is the board as such, and not the individual members, that is the actual defendant. The demurrer of the individuals named as defendants should have been sustained, and the action dismissed as to them. (See *Neblett* v. *Superior Court,* 86 Cal.App.2d 64, 66 [194 P.2d 22]; *Alexander* v. *Superior Court,* 91 Cal.App. 312, 317 [266 P. 993]; *Gresham* v. *Superior Court,* 44 Cal.App.2d 664, 666 [112 P.2d 965]; 3 Witkin, Cal. Procedure (1954) p. 2547.) Since the judgment and injunction refer to plural defendants and purport to affect the individuals named as defendants in the original complaint, the judgment and injunction must be modified to make clear that both run only against the administrative agency, and not against the individuals who comprise its membership, or its executive secretary.

Insofar as the language of the judgment may be read so as to apply to the individual defendants, the trial court is directed to modify the judgment so that both judgment and injunction refer and apply only to appellant California State Board of Pharmacy, and to dismiss the action as to the individual defendants. As so modified, the judgment is affirmed.

Appellants have also appealed from an order sustaining without leave to amend, a demurrer to their cross-complaint, and from an order overruling a demurrer to the complaint for declaratory relief. Neither order is appealable. Each of such purported appeals is dismissed.

Respondent shall recover its costs on appeal.

Draper, P. J., and Devine, J., concurred.