[Civ. No. 11651. Fourth Dist., Div. Two. May 30, 1972.]

DANIEL R. ALLEN et al., Plaintiffs and Respondents, v.
CALIFORNIA BOARD OF BARBER EXAMINERS,
Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Jeffrey T. Miller and Jeffrey Wohlner, Deputy Attorneys General, for Defendant and Appellant.

Launer, Chaffee & Hanna and Walter B. Chaffee for Plaintiffs and Respondents.

**OPINION**

**KAUFMAN, J.**—Respondents are an apprentice barber, a journeyman barber and two owners of a barbershop, all duly certificated. Their certificates were revoked[1] by appellant Board of Barber Examiners (hereinafter Board) for furnishing barbering services at prices below those prescribed in the minimum price schedule established by the Board for San Diego County. In the trial court, respondents sought a writ of mandate directed

---

[1]The revocations were stayed for three years upon the conditions that respondents suffer a 15-day suspension and that no cause for disciplinary action against respondents involving violation of the minimum price schedules occur within three years.

to the Board commanding it to vacate and set aside its orders revoking respondents' certificates. (See Code Civ. Proc., § 1084 et seq. and particularly § 1094.5.) The court found the minimum price schedules invalid and issued a peremptory writ of mandate. The Board appeals.

The record on appeal consists of an agreed statement (see Cal. Rules of Court, rule 6) from which it appears that the basis of decision in the trial court was that the statutory provisions authorizing the Board to establish minimum price schedules for the barbering industry (Bus. & Prof. Code, §§ 6551 through 6557) violate the due process clauses of the Fourteenth Amendment to the United States Constitution and article I of the California Constitution and, additionally, constitute an unlawful delegation of legislative power to an administrative agency.

In 1941 (Stats. 1941, ch. 317) the Legislature added to the statutes regulating the barbering industry (hereinafter the Barbers' Act) Business and Professions Code, sections 6551 through 6557 authorizing the Board of Barber Examiners to establish minimum price schedules for barbering services for any city or county. As detailed hereinafter these minimum price provisions of the Barbers' Act are substantially identical to the minimum price provisions of the Dry Cleaners' Act enacted by the Legislature in 1945. (See Stats. 1945, ch. 1517, § 1, pp. 2847-2849 establishing former Bus. & Prof. Code, §§ 9560 through 9566 which sections were subsequently repealed by Stats. 1957, ch. 1691, § 11, p. 3066.) In *State Board* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436, 440-446 [254 P.2d 29], over the vigorous dissent of three justices, the majority of the California Supreme Court held the minimum price provisions of the Dry Cleaners' Act unconstitutional on due process grounds in that the legislation did not constitute a proper exercise of the police power. The court cited with approval and placed considerable reliance on *In re Kazas,* 22 Cal.App.2d 161 [70 P.2d 962] invalidating on the same grounds a municipal ordinance establishing minimum prices for barbering services in the City of Bakersfield.

Appellant urges with some persuasiveness that the approach to and resolution of the due process question by the majority in *Thrift-D-Lux* and the court in *Kazas* do not represent currently accepted principles determinative of such a question. (Cf. *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control,* 65 Cal.2d 349, 358-365 [55 Cal.Rptr. 23, 420 P.2d 735]; *Doyle* v. *Board of Barber Examiners,* 219 Cal.App.2d 504, 509-515 [33 Cal.Rptr. 349].) Unless the minimum price provisions of the Barbers' Act can be distinguished from those of the Dry Cleaners' Act held violative of due process in *Thrift-D-Lux,* however, we as an intermediate appellate

court would be bound by the decision in *Thrift-D-Lux.* (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, as respects the due process question, appellant urges that the minimum price provisions of the Barbers' Act are distinguishable from those of the Dry Cleaners' Act on two bases: first, in contrast to the Dry Cleaners' Act (Stats. 1945, ch. 1517) which contains no statement of legislative intent or purpose, the Barbers' Act contains a lengthy statement of legislative intent and purpose evidencing a legislative determination that prices in the barbering industry are related to public health, sanitation and safety (Stats. 1941, ch. 317, § 1, p. 1469); second, barbering involves interpersonal contact which makes it more directly related to public health and sanitation than cleaning and pressing clothes which does not involve such personal contact.    We do not pass upon these arguments for we have concluded that, on the delegation of legislative power issue, the case at bench is indistinguishable from the decision in *State Board* v. *Thrift-D-Lux Cleaners, supra,* 40 Cal.2d at pages 448-449 by which we are bound, and it is unnecessary for us to reach the due process question (*Palermo* v. *Stockton Theatres, Inc.,* 32 Cal.2d 53, 65-66 [195 P.2d 1]).

An alternative basis of decision by the majority in *State Board* v. *Thrift-D-Lux Cleaners, supra,* was that the minimum price provisions of the Dry Cleaners' Act constituted an unlawful delegation of legislative powers without sufficiently definite standards to the State Board of Dry Cleaners composed of "six active members of the industry, and one member of the public at large." (40 Cal.2d at pp. 448-449.)[2]

In holding that the minimum price provisions of the Dry Cleaners' Act constituted an unlawful delegation of legislative power to the State Board of Dry Cleaners, the *Thrift-D-Lux* court reviewed the standards set forth in the legislation (Stats. 1945, ch. 1517, § 1, pp. 2847-2849 [then Bus. & Prof. Code, §§ 9560 through 9566, subsequently repealed by Stats. 1957, ch. 1691, § 11, p. 3066]) and found them insufficient, particularly in view of the fact that the price-fixing power was delegated to a seven-man board,

---

[2]Appellant urges that that portion of the *Thrift-D-Lux* opinion dealing with the delegation of legislative power issue was not an alternative basis of decision but, rather, dicta. We are persuaded, however, to the contrary. It is true that the opening sentence of that portion of the opinion reads: "The defendant points to another ground upon which the invalidity of the statute *may well be based.*" (40 Cal.2d at p. 448; italics supplied.) However, the majority opinion concludes: "From the foregoing it follows that the price fixing provisions of the statute under attack must fall on the constitutional grounds *stated*" (40 Cal.2d at p. 449; italics supplied), and the unlawful delegation ground is characterized as an alternative basis of decision both by the dissent in *Thrift-D-Lux* itself (40 Cal.2d at p. 455) and the court in *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at page 366.

six of whom who were active members of the dry cleaning industry. (40 Cal.2d at pp. 448-449.) The *Thrift-D-Lux* case was distinguished on this point in *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at pages 366-367, but in distinguishing the case the court expressed no disapproval of its rationale or conclusion. On the contrary, the *Wilke & Holzheiser* opinion indicates approval of the *Thrift-D-Lux* decision on this point and serves to reinforce it. ■ "When the power which the Legislature purports to confer is the power to regulate the business of one's competitors, as in *Thrift-D-Lux,* . . . a real danger of abuse arises, and the courts accordingly insist upon stringent standards to contain and guide the exercise of the delegated power. [Fn. omitted.]" (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at p. 367.)

■ Appellant first seeks to distinguish the Barbers' Act from the Dry Cleaners' Act on a difference in the makeup of the governing board. The seven members of the State Board of Dry Cleaners consists of "one public member and the owners of two retail plants, two wholesale plants, and two shops." (Bus. & Prof. Code, § 9530.) Thus, the six industry members are all "owners." The State Board of Barber Examiners consists of five members including one public member and four barbers who have engaged in the practice of barbering in California for at least five years immediately prior to their appointments. Of the four, one member "shall be a journeyman barber and one member shall be a barber employing one or more journeyman barbers." (Bus. & Prof. Code, § 6501.) Thus, only one member of the State Board of Barber Examiners need be an "owner." We do not find this distinction meaningful in terms of the rationale of the *Thrift-D-Lux* and *Wilke & Holzheiser* cases. The legislation "attempts to delegate . . . powers to an administrative board made up of interested members of the industry, the majority of which can initiate regulatory action by the board in that industry . . . ." (*State Board* v. *Thrift-D-Lux Cleaners, supra,* 40 Cal.2d at p. 449.) The power which the legislation "purports to confer is the power to regulate the business of one's competitors . . . ." (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at p. 367.) A journeyman barber whose compensation is undoubtedly affected by the price of barbering services is as personally interested in the price of such services as an "owner."

Next, it is asserted that additional standards are contained in the Barbers' Act not found in the Dry Cleaners' Act. In this, appellant is incorrect. The minimum price provisions of the two acts are substantially identical. (Compare Bus. & Prof. Code, §§ 6551 through 6557 with former Bus. &

Prof. Code, §§ 9560 through 9566 [Stats. 1945, ch. 1517, § 1, pp. 2847-2849, subsequently repealed by Stats. 1957, ch. 1691, § 11, p. 3066].)

Specifically appellant points to Business and Professions Code, sections 6556.5 and 6556.6 which provide respectively as follows: "In establishing a minimum price schedule, the board shall consider all conditions affecting the practice of barbering in that city and county, and the relation of those conditions to the public health and safety." (Bus. & Prof. Code, § 6556.5.) "In establishing a minimum price schedule, the board shall consider the necessary costs incurred in that city or county in maintaining a barber shop in a clean, healthful and sanitary condition." (Bus. & Prof. Code, § 6556.6.) The corresponding sections of the Dry Cleaners' Act provided as follows: "In establishing minimum price schedules, the board shall consider all conditions affecting the business of cleaning, dyeing and pressing in that city, county or other area and the relation of those conditions to the public health, welfare and safety." (Former Bus. & Prof. Code, § 9564 [Stats. 1945, ch. 1517, § 1, p. 2848].) "Before the board shall establish minimum price schedules . . . the board shall cause to be conducted . . . a cost survey . . . to determine the cost of the various items of cleaning, dyeing and pressing service for which minimum price schedules shall be established, and in establishing such minimum price schedules the board shall not fix a price for any service at a sum less than that which is shown to be the cost price of such service . . . ." (Former Bus. & Prof. Code, § 9565 [Stats. 1945, ch. 1517, § 1, p. 2848].) We find no material difference in the statutory provisions. In each case the board is directed to consider all conditions affecting the industry, including costs, and the relation of those conditions to the public health and safety. If anything, the directions in the Dry Cleaners' Act are slightly more specific than those in the Barbers Act in that the Board is specifically directed to conduct a cost survey and to set the price of services at not less than their cost.

Appellant also points to the provisions of Business and Professions Code, section 6557 relating to the Board's power to modify a previously established minimum price schedule if, after investigation, the Board "determines that the minimum prices so established . . . are insufficient properly to provide healthful services to the public and to maintain a sanitary barber shop, or that any minimum price set creates an undue hardship on barber shop owners and operators . . . ." But the State Board of Dry Cleaners was given the same power in substantially identical language in former Business and Professions Code, section 9566 (Stats. 1945, ch. 1517, § 1, pp. 2848-2849).

Appellant also apparently places some reliance on Business and Profes-

sions Code, section 6556.7 which provides: "At the conclusion of an investigation therefor, the board may establish a reasonable and just minimum price schedule conforming to the requirements of this article." However, that is the precise language of the first sentence of former Business and Professions Code, section 9566 (Stats. 1945, ch. 1517, § 1, p. 2848).

Last, appellant cites a number of cases in which it asserts that delegations of legislative power to administrative agencies were upheld where the standards set forth were no more definite than those in the Barbers' Act. (E.g., *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at pp. 365-369; *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 644-645 [91 P.2d 577]; *Sinclair* v. *State of California,* 194 Cal.App.2d 397, 402-405 [15 Cal.Rptr. 493]; *Cal. State Auto. etc. Bureau* v. *Downey,* 96 Cal.App.2d 876, 900-907 [216 P.2d 882]; see also *Stoddard* v. *Edelman,* 4 Cal.App.3d 544, 548-549 [84 Cal.Rptr. 443].) None of the cited cases, however, involve the delegation of a power to fix prices to an administrative agency made up of interested members of the industry. As heretofore noted, under such circumstances "the courts . . . insist upon stringent standards to contain and guide the exercise of the delegated power." (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* 65 Cal.2d at p. 367; *State Board* v. *Thrift-D-Lux Cleaners, supra,* 40 Cal.2d at pp. 448-449; *Bayside Timber Co.* v. *Board of Supervisors,* 20 Cal.App.3d 1, 12-13 [97 Cal.Rptr. 431].) In any event, as we have seen, the situation presented by the case at bench as to the delegation of authority problem is indistinguishable from that considered and decided by the California Supreme Court in *State Board* v. *Thrift-D-Lux Cleaners, supra,* 40 Cal.2d 436, 448-449, and we as an intermediate appellate court are bound by that decision. (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at p. 455.)

The judgment is affirmed.

Tamura, Acting P. J., and Gabbert, J., concurred.

A petition for a rehearing was denied June 15, 1972, and appellant's petition for a hearing by the Supreme Court was denied July 26, 1972.