[Civ. No. 30995. First Dist., Div. One. July 2, 1973.]

CURTIS ANTOINE et al., Plaintiffs and Appellants, v.
DEPARTMENT OF PUBLIC HEALTH, Defendant and Respondent.

[Civ. No. 30996. First Dist., Div. One. July 2, 1973.]

JOHN HAWKS et al., Plaintiffs and Appellants, v.
DEPARTMENT OF PUBLIC HEALTH, Defendant and Respondent.

216

**COUNSEL**

Redland & Pinney and Van H. Pinney for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Richard L. Mayers, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Each of appellants allegedly is an X-ray technician licensed as such by, and a member of, the American Radiography Technologists (ART), a national organization which approves X-ray training schools in this state and elsewhere, and examines and licenses or certifies its members. In consolidated appeals two of the technicians seek review of a judgment in one action (No. 1 Civ. 30995, superior court No. 411487) that purported to dispose of a complaint for declaratory relief, in which they sought a declaration that they and others similarly licensed by ART be certified to use X-rays upon human beings without the necessity for examination under the provisions of the Health and Safety Code regulating the practice of radiologic technology. (Health & Saf. Code, div. XX, ch. 7.4, §§ 25660-25699.2, as added Stats. 1969, ch. 1504, § 1, p. 3076 to require certification after July 1, 1971 [§ 25671].) Two other technicians seek review of a judgment in a second action (No. 1 Civ. 30996, superior court No. 411530) that denied a petition in which they sought a writ of mandate directing the certification of petitioners and staying the respondent Department of Public Health's requirement that they submit to an examination prior to July 1, 1971.

In the first action it is contended that the court erred in purporting to dispose of the case on the merits, and in both actions it is contended that the trial court erred in denying a preliminary injunction against the requirement of examination, and in refusing to grant the other relief sought. It is concluded that the trial court erred in attempting to dispose of the action for declaratory relief on the merits, but that it in fact did rule on the application for a preliminary injunction. Since the judgment, erroneous on the record, may properly be treated as an order refusing to grant an injunction, the appeal may be treated as an appeal from that order. (Code Civ. Proc., § 904.1, subd. (f).) On the merits it is concluded that the trial court properly denied the application for a preliminary injunction in the action for declaratory relief, and properly denied the petition for a writ of mandate sought in the second action. The judgment in the former

action must be reversed for further proceedings in accordance with law. The judgment denying the petition for writ of mandate must be affirmed.

I

On April 15, 1971, Antoine and Martin filed their "Complaint For Declaratory Relief, Temporary Restraining Order, and Injunction." The allegations going to the merits of the action are reviewed below. They sought a temporary restraining order and a preliminary injunction to restrain the department from requiring plaintiffs and approximately 400 licensees of ART to take examinations prior to continuing as X-ray technicians after July 1, 1971, and a declaration that the department should certify the petitioners and other licensees of ART without examination because the department was arbitrary and capricious in refusing to recognize certification by ART as a reasonable equivalent of its own licensing standards, and in failing to hold a formal hearing to determine that ART's standards were equivalent.

The same day the court issued a temporary restraining order (see Code Civ. Proc., § 527) staying any and all examinations involving plaintiffs and other members of ART pending hearing of an order to show cause set for April 22, 1971. By notice dated May 12, 1971, the attorneys for the plaintiffs gave notice that the hearing on the order to show cause had been continued to May 20, 1971.

At that time the deputy attorney general representing the department, who had appeared in response to a similar notice issued in the second, mandamus, action, represented that he had just learned of the existence of the declaratory relief action.[1] He stated, "It is the same allegation [as the petition for writ of mandate] except for declaratory relief, so if you have no objection and [the attorney for plaintiffs] has none, I will treat my return to the Hawks case as applicable to the Antoine case, and I think the issues are the same.

"THE COURT: For purposes of this hearing I have no objection.

"[Deputy Attorney General]: I think that would be the simplest.

"[Attorney for plaintiffs]: I have no objection, Your Honor. And the affidavit of Simon Kinsman in the Hawks matter may be deemed filed in

[1]The record in the declaratory relief action indicates that a copy of the complaint and the summons in that action were served on a representative of the department on April 16, 1971. No answer or other pleading was filed by the department. On July 27, 1971, a "Declaration Re Loss of Original Summons and Service of Process" was filed with a request for entry of default. The department's default was entered the same day.

the Antoine matter. I have earlier today given to counsel a copy of a memorandum in the Hawks matter which I ask the Court to accept at this time, and may this be equally applicable to the Antoine matter because the points involved are substantially the same.

"THE COURT: All right. You may proceed."

During the course of the argument the attorney for the plaintiffs asserted: "We feel that on both grounds, Your Honor, the relief sought in these two actions should be granted. . . . These people are entitled to the due process of law. They are entitled to the right to a hearing for which no provision is given, and I strongly believe the delegation of legislative power here is improper. Submit it on that."

The minutes of the court reflect, "Respective counsel are present and stipulate that all documents filed in action No. 411530 may be used in this action for the purpose of this hearing. Respective counsel present arguments in support and opposition of restraining order and the matter is submitted."

Thereafter, at a time undisclosed by the record, but apparently prior to July 13, 1971, when the attorney for the plaintiffs dated his "Objections to Proposed Findings of Fact and Conclusions of Law" and his declaration in support thereof, the court announced its decision, and the department served and filed proposed findings of fact and conclusions of law. The plaintiffs insisted that the latter failed to reflect the nature of the proceedings before the court and erroneously assumed that the court conducted a hearing of the case, and decided it on the merits. Plaintiffs specifically objected to all of the defendant's proposed findings of fact, and all of the proposed conclusions of law except one reading, "Defendant is further entitled to a judgment denying a preliminary injunction against defendant's continued refusal to grant reciprocity to members of A.R.T. or to require said members to submit to an examination as a condition to using X-rays on human beings. The temporary restraining order is dissolved."

On August 6, 1971, a hearing was held on plaintiffs' objections. The statements at the earlier hearing were reviewed, and counsel argued as to whether or not there were factual issues to be resolved. The court took the matter under submission, and resolved it in favor of the department. The proposed findings of fact and conclusions of law were signed and filed August 9, 1971, and on August 26, 1971, a judgment, which was entered the following day, was signed and filed. This appeal ensued.

The judgment states: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the temporary restraining order is hereby dissolved *and the*

*writ of mandate is hereby denied."* (Italics added.) Although the emphasized portion is palpably erroneous, it may be deemed aided by reference to the conclusions of law which state, in addition to what was quoted above, "Defendant is entitled to a judgment declaring that its refusal to grant reciprocity to plaintiffs and members of A.R.T. was valid and legal."

The plaintiffs had a right to proceed in declaratory relief to secure a judicial declaration as to the validity of the regulations of the department which had denied recognition of licensing and certification by ART. (See Gov. Code, § 11440; and *Sperry & Hutchinson Co.* v. *Cal. State Bd. of Pharmacy* (1966) 241 Cal.App.2d 229, 232-233 [50 Cal.Rptr. 489].)

The action being properly before the court, the court was not entitled to dispose of it on the merits until an answer was filed and it was at issue. (Cf. Code Civ. Proc., § 527, with §§ 588-594 and 577; and Cal. Rules of Court, rule 206 et seq.) In *Anderson* v. *Joseph* (1956) 146 Cal.App. 2d 450 [303 P.2d 1053], under somewhat similar circumstances, the court ruled, ". . . unless based upon stipulation or other satisfactory showings submitting the cause on the merits, the court was without jurisdiction to determine the merits upon the hearing of a motion for a temporary injunction and the orders purporting to do so are void." (146 Cal.App.2d at p. 454. See also *State Bd. of Barbers Examiners* v. *Star* (1970) 8 Cal. App.3d 736, 739 [87 Cal.Rptr. 450]; and *Paul* v. *Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112, 121-123 [25 Cal.Rptr. 595].)

The department points out that the only distinguishing feature between the two actions involved is that in the first action the technicians sought a declaration that the department was illegally refusing to certify the plaintiffs and others with similar qualifications, whereas the petition for writ of mandate merely was directed toward enforcement of the rights of the two petitioners in that action. It points out that the issues raised at the hearing with respect to both actions were the same, and that the plaintiffs did in fact secure a declaration on those issues. This analysis misses the point. In the absence of an answer by the department and an actual trial, the plaintiffs, if they were content to forego the attempt to secure a preliminary injunction, were not called upon to present evidence with respect to the matters covered in the return to the alternative writ of mandate, which was before the court in both actions at the May 20, 1971, hearing.

The findings recite, "This matter was tried jointly with [the mandamus action]." They are addressed to the truth and falsity of the matters alleged in the complaint, and the conclusions purport to direct a final judgment. Nevertheless, the plaintiffs persistently objected to the exercise of this extended jurisdiction by the trial court. The department and the court

took the position at the settlement of the findings that the plaintiffs had in effect stipulated to a trial on the merits. The record fails to support this assumption. There is nothing in the remarks of the attorney for the plaintiffs which indicates that he was seeking other than an adjudication on the request for a preliminary injunction when he stipulated to the use of the return in the mandamus action for use in connection with hearing scheduled on May 20, 1971, in the declaratory relief action.

The judgment in 1 Civil 30995 (superior court No. 411487) must be reversed.[2]

## II

As acknowledged by plaintiffs in the declaratory relief action, the issue of whether or not a preliminary injunction should issue was tendered to the court. The appeal in that action properly embraces the validity of the judgment insofar as it embraces an order denying the preliminary injunction. (Code Civ. Proc., § 904.1, subd. (f).)

In the second, mandamus action, the record does not reveal the issuance of an alternative writ of mandate. (See Code Civ. Proc., § 1087.) The court did issue a stay (see § 1094.5, subd. (f)) in the form of an "Order to Show Cause and Temporary Restraining Order" returnable, as was the order in the earlier action, on April 22, 1971. Under date of May 12, 1971, the petitioners gave notice that a hearing on the order to show cause would be heard on May 20, 1971. The order was apparently treated as an alternative writ by the department, because on May 14, 1971, it filed its "Return to Petition for Writ of Mandate" (see former § 1089, Stats. 1949, ch. 1462, § 1, p. 2544 [amended effective Mar. 4, 1972, Stats. 1971, ch. 1475, § 3, p. 2914]), in which it denied the material allegations of the petition and affirmatively set forth, by reference to an affidavit of the chief of the Bureau of Radiological Health of the department and exhibits attached thereto, the applicable statute and administrative regulations, and the record of the proceedings held to determine whether ART licensees should be granted certification on the ground that the requirements were equivalent to those established by the department. Factual and legal issues were raised by the return. The petitioners were entitled to question the legal sufficiency of the return, and to offer proof

---

[2]No opinion is expressed as to the effect of the default secured by plaintiffs upon the department's failure to answer (see fn. 1, *supra*), or with respect to the extent certain issues of law are conclusively determined by the affirmance of the order denying the preliminary injunction, and the affirmance of the judgment denying the petition for writ of mandate as set forth in part II of this opinion. (See, however, *Paul* v. *Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112 at p. 123 [25 Cal.Rptr. 595].)

to deny or avoid the facts raised in the return. (See former § 1091, as enacted 1872 [amended effective Mar. 4, 1972, by Stats. 1971, ch. 1475, § 5, p. 2914].)

At the hearing on May 20, 1971, the petitioners did not offer any evidence to controvert the facts alleged in the return, nor did they request time to do so. In fact they stipulated that the affidavit annexed to the return would be deemed in evidence. They conceded that the legislation was valid, but contended that the department had failed to comply with the requirements of the Legislature and established administrative procedure law in regard to hearings for the issuance or denial of a license[3]; and secondly that the administrative regulations promulgated by the department, under which it was denying accreditation to licensees of ART and requiring them to take an examination, were invalid because the Legislature had failed to set forth adequate standards to guide the department, in promulgating those regulations.

The court made findings of fact which were supported by the evidence received at the hearing.[4] It concluded: "[¶] I Regulations adopted by re-

---

[3]This contention apparently rested on the theory that since some of the licensees of ART received their licenses under circumstances that were the equivalent of the standards established by the department, the fact that ART could not generally qualify for reciprocity was immaterial, and each licensee of ART was entitled to a hearing to determine whether the particular examination he had taken and his qualifications were equivalent to the department's standards. (See *Andrews* v. *State Board of Registration* (1954) 123 Cal.App.2d 685, 695-696 [267 P.2d 352].) This point is not raised on appeal.

[4]These findings recite in part:

"III

"On November 6, 1970, the State Board of Health regularly adopted regulations, contained in Title 17 California Administrative Code, sections 30400 et seq. implementing Health and Safety Code sections 25660 et seq. (added by Chapter 1504, Stats. 1969).

"IV

"American Radiography Technologists (A.R.T.) sought respondent's approval under Health and Safety Code section 25678 and supplied respondent with specific information concerning its programs.

"V

"Respondent refused to issue its approval under Health and Safety Code section 25678 and so advised officers of A.R.T. on January 29, 1971 and February 3, 1971.

"VI

"Respondent refused to give recognition to A.R.T. certificates for the following reasons:

"1. A.R.T. failed to make school inspections and failed to have inspection procedures, inspection forms or inspection reports as required by Title 17 Section 30410(b)(2) of the California Administrative Code. Said regulation is authorized by Health and Safety Code sections 25668(d), 25686 and 25688.

"2. A.R.T. has inadequate or non-existent security procedures to insure the integrity of the examination during its preparation, distribution, administration, scoring and

spondent to implement Health and Safety Code sections 25660 et seq., namely, Title 17, Part I, Chapter 5, Subchapter 4.5 of the California Administrative Code consisting of sections 30400 et seq. are valid and legal and are binding on A.R.T.; [¶] II A.R.T. failed to meet or comply with the standards set forth in the aforesaid regulations in the manner described in Finding of Fact VI above.; [¶] III Respondent is entitled to a judgment denying the writ of mandate and dissolving the temporary restraining order. Respondent shall recover costs of suit herein."

Petitioner filed objections to these findings, which included the same attack on procedural grounds that was made to the similar findings in the declaratory relief action. (See part I above.) Since the mandamus action by its nature was in a different posture, the procedural objections were not well taken. They are not pressed on this appeal. The sole issue on appeal with respect to the judgment in the mandamus action, and the order denying the preliminary injunction in the declaratory relief action is whether the legislation failed to set forth adequate standards to guide the department in regulating those embraced within the provisions of the act.

The pertinent provisions of the act are as follows:

Section 25660: "The Legislature finds and declares that the public health interest requires that the people of this state be protected from excessive and improper exposure to ionizing radiation. It is the purpose of this chapter to establish standards of education, training, and experience for persons who use X-rays on human beings and to prescribe means for assuring that these standards are met."

Section 25663: "The State *Department of* Health shall appoint a certification committee to assist, advise, and make recommendations for the establishment of rules and regulations necessary to insure the proper administration and enforcement of the provisions of this chapter, and for those purposes to serve as consultants to the department. The appointments shall be made from lists of at least three nominees for each position submitted by appropriate professional associations and societies designated by the Director of [ ] Health, and provisions shall be made for orderly rotation of

---

final notification as required by paragraph 6 of the 'Standards for Recognizing the Certificates of Other Certifying Organizations' as developed and adopted by respondent.

"3. A.R.T. issues its certificates to people who do not meet its own requirements as stated in its application forms and who do not meet the minimum education requirements required by respondent as set forth in section 30431 of Title 17 California Administrative Code."

membership."[5] (Italics and [ ] indicate substitution and deletion of titles effected in 1971 after these actions were commenced.)

Section 25668: "The board shall: (a) Upon recommendation of the committee, adopt such regulations as may be necessary to accomplish the purposes of this chapter.

"(b) Provide for certification of radiologic technologists, without limitation as to procedures or areas of application, except as provided in Section 25673 [defines acts not authorized by certification]. Separate certificates shall be provided for diagnostic and for therapeutic radiologic technology.

"(c) . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Provide for the approval of schools for radiologic technologists.[6]

"(e) . . . . . . . . . . . . . . . . . . . . . .

"(f) Upon recommendation of the committee, exempt from certification requirements licentiates of the healing arts who have successfully completed formal courses in schools certified by the board and who have successfully passed a roentgenology technology and radiation protection examination approved by the board and administered by the board which issued his license."

Section 25669: "Any rules and regulations adopted by the board pursuant to subdivision (a) of Section 25668 shall be adopted only after consultation with and approval of the committee. Approval of such rules and regulations shall be made by five affirmative votes of those present at an official meeting of the committee."

---

[5]The constitution of the committee is prescribed by section 25664 which reads: "The committee shall consist of the director or his designate, who shall serve as chairman ex officio, but who shall not vote, and the following nine members who are residents of the state:

"(1) Five physicians and surgeons licensed to practice medicine in this state, three of whom shall be certified in radiology by the American Board of Radiology. At least one of the radiologists shall be representative of the hospital practice of radiology.

"(2) Two persons with at least five years' experience in the practice of radiologic technology. At least one of these persons shall be representative of the hospital practice of radiologic technology. Except for the appointment of these two persons to the first committee, every such person thereafter appointed to the committee under the provisions of this subdivision shall be certified as a radiologic technologist.

"(3) One radiological physicist, qualified in the use of physics in the practice of medicine.

"(4) One licentiate of the healing arts who is not a physician or surgeon."

[6]Section 25686 provides: "(a) The department shall approve schools for radiologic technologists which, in the judgment of the department, will provide instruction adequate to prepare individuals to meet requirements for certification as radiologic technologists under this chapter.

"(b) The department shall provide for reasonable standards for approved schools, for procedures for obtaining and maintaining approval, and for revocation of approval where standards are not maintained."

Section 25675: "The department shall prescribe minimum qualifications for granting of permits and certificates in radiologic technology in any classification."

Section 25677: "Except as provided in Section 25683 [provides for limited practical examination and certain exemptions for applicants with five years experience as radiologic technologists], in order to be certified as a radiologic technologist pursuant to subdivision (b) of Section 25668, an applicant shall pass a written examination approved by the department and administered by the department or by such other agency or organization designated by the department."

Section 25678: "The department may accept in lieu of its own examination a certificate of another agency or organization which certifies radiologic technologists, provided the certificate was issued on the basis of qualifications and an examination deemed by the department to be reasonably equivalent to the standards established by the department."

Section 25679: "The department shall certify as a radiologic technologist any applicant who meets the requirements of this chapter."

Finally it is provided in section 25671: "It shall be unlawful for any person to administer or use diagnostic or therapeutic X-ray on human beings in this state after July 1, 1971, unless such person has been certified or granted a permit pursuant to subdivision (b) or (c) of Section 25668 or pursuant to Section 25670, is acting within the scope of such certification or permit, and is acting under the supervision of a licentiate of the healing arts."

Under the authority conferred by the foregoing provisions the Bureau of Radiological Health of the Department of Public Health promulgated its "Regulations Relating to Radiologic Technology" (Cal. Admin. Code, tit. 17, pt 1, ch. 5, subch. 4.5, §§ 30400-30438). These regulations deal with the certification requirement (§ 30401), applications (§ 30402), definitions (§ 30403), the certification committee (§ 30404), special and temporary permits (§§ 30405-30406), disciplinary action and penalties (§ 30407), fees (§ 30408), restrictions (§ 30409), reciprocity (§ 30410),[7]

---

[7]Section 30410 provides:

"(a) The department may accept in lieu of its own examination a certificate or permit of another agency or organization which certifies radiologic technologists, upon a finding that such certificate or permit was issued on the basis of qualifications and an examination deemed by the department to be reasonably equivalent to the standards established by the department.

"(b) For the purpose of making a finding pursuant to this section, the applicant

certificates and permits (§ 30411), policies and procedure for issuance of certificates and permits for diagnostic radiologic technology (§§ 30412-30419), the approval of schools for training certified radiologic technologists and limited permittees (§§ 30420-30427), and the certification of licentiates of the healing arts (§ 30438).

The appellants point out that the substantive portions of the chapter regulating radiologic technology fail to embrace any specific standards based on education or experience, and that they leave the determination of express criteria for certification and the issuance of permits and approval of schools up to the department. In *Hewitt* v. *Board of Medical Examiners* (1906) 148 Cal. 590 [84 P. 39], the court annulled a revocation of a physician's license which was based on alleged unprofessional conduct which fell within what was found to be a vague, uncertain and indefinite statutory designation of " 'advertising of medical business in which *grossly improbable* statements are made.' " (Italics added.) The opinion states, "As the duty of determining whether such professional or moral unfitness exists must necessarily be vested in somebody other than the legislature, it is usually committed by appropriate legislation to boards composed of men learned in their profession. Such power, however, to revoke the license of a practitioner when conferred upon a board must be under provisions of law which are reasonable, must apply to matters of conduct upon the part of the practitioner which affect the health, morals, or safety of the community, and the acts or conduct which shall render him liable to the penalty of forfeiture of his right to practice his profession must be declared with such certainty and definiteness in the act that he may know exactly

---

for certification shall be required to supply, in a form satisfactory to the department, evidence of his certifying agency's:

"(1) Minimum requirements of education and experience for certificants
"(2) Procedures and standards used in approving schools
"(3) Sample questions used for examining applicants
"(4) The method of conducting such examinations

"(c) An applicant for a certificate or permit pursuant to this section shall provide the department with a copy of his valid certificate or permit and a résumé of work experience in radiologic technology during the past five (5) years. A certificate or permit older than five (5) years, based on the date of last renewal, shall not be considered valid.

"(d) An applicant for a certificate or permit pursuant to this section, who has worked in his profession for less than six (6) months during the last six (6) years preceding the date of his application, shall be required to pass an appropriate examination administered by the department. After July 1, 1972, an applicant whose original certificate was issued more than ten (10) years preceding the date of his application shall be required to pass an appropriate examination administered by the department.

"(e) The committee periodically shall review the action of the department with regard to reciprocity."

what they are. The right to practice medicine is, like the right to practice any other profession, a valuable property right, in which, under the constitution and laws of the state, one is entitled to be protected and secured." (148 Cal. at p. 592. See also *Schechter Corp.* v. *United States* (1935) 295 U.S. 495, 529-542 [79 L.Ed. 1570, 1579-1587, 53 S.Ct. 837, 97 A.L.R. 947]; *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 662 [97 Cal.Rptr. 320, 488 P.2d 648] [cert. den. (1972) 404 U.S. 1038 (30 L.Ed.2d 729, 92 S.Ct. 710)]; *Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 870 [94 Cal. Rptr. 777, 484 P.2d 945]; *Duskin* v. *State Board of Dry Cleaners* (1962) 58 Cal.2d 155, 159 [23 Cal.Rptr. 404, 373 P.2d 468]; *Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 236 [18 Cal.Rptr. 501, 368 P.2d 101]; *State Board* v. *Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436, 448 [254 P.2d 29]; *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 641 [91 P.2d 577]; *Schaezlein* v. *Cabaniss* (1902) 135 Cal. 466, 469 and 471 [67 P. 765]; *Allen* v. *California Board of Barber Examiners* (1972) 25 Cal.App.3d 1014, 1019 [102 Cal.Rptr. 368]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 11 [97 Cal.Rptr. 431]; *People's etc. L. Assn.* v. *Franchise Tax Bd.* (1952) 110 Cal.App.2d 696, 700-701 [243 P.2d 902]; 3 Witkin, Summary of Cal. Law (1960 and 1969 Supp.) Constitutional Law, §§ 45, 46 and 46A, pp. 1834-1837, and Supp. 894-895; and Comment, *The Void for Vagueness Rule in California* (1953) 41 Cal.L.Rev. 523, 529, 532.)

Each side relies upon the following statement of principles, quoted in *Duskin* v. *State Board of Dry Cleaners, supra,* 58 Cal.2d at pages 161, 162, from *Am. Distilling Co.* v. *St. Bd. of Equalization* (1942) 55 Cal.App.2d 799, 805 [131 P.2d 609]: "It is true that 'the Legislature may delegate authority to administrative boards to adopt and enforce reasonable rules for carrying into effect the expressed purpose of a statute even though such rules include the authorization to exercise discretion in doing so, provided that discretion is not purely arbitrary and does not amount to a sanction to add to or change the statute or confer upon the board a right to determine what the law shall be in a particular case.' [Citations.]"

Before further analyzing the rule and the exceptions it should be pointed out that this is not a case involving a specially protected constitutional interest, such as freedom of speech. (Cf. *Perrine* v. *Municipal Court, supra,* 5 Cal.3d at pp. 661-662, and *Dillon* v. *Municipal Court, supra,* 4 Cal.3d at pp. 869-870.) Nor is it a situation where the Legislature has delegated authority to the very individuals who are to be the subject of the regulations. (Cf. *Schechter Corp.* v. *United States, supra,* 295 U.S. at p. 537 [79 L.Ed. at p. 1584]; *People* v. *Belous* (1969) 71 Cal.2d 954, 972-973 [80 Cal.Rptr. 354, 458 P.2d 194] [cert. den. (1970) 397 U.S. 915 (25 L.Ed. 2d 96, 90 S.Ct. 920)]; *Blumenthal* v. *Board of Medical Examiners, supra,*

57 Cal.2d at pp. 235-236; *State Board* v. *Thrift-D-Lux Cleaners, supra,* 40 Cal.2d at pp. 448, 449; *Allen* v. *California Board of Barber Examiners, supra,* 25 Cal.App.3d at p. 1020; and *Bayside Timber Co.* v. *Board of Supervisors, supra,* 20 Cal.App.3d at p. 12.) In this case only two out of the nine members of the committee are of the class to be certified. (See § 25664, fn. 5 above.)

In the *Duskin* case the court distinguished between that specificity necessary in a self-executing statute and the standard of definiteness "applicable where the Legislature delegates responsibility to a board or agency to carry out a legislatively declared policy." (58 Cal.2d at pp. 159-161.) It defined the test in the latter situation as follows: "Such a standard need be sufficiently definite only to provide directives of conduct for the administrative body in exercising its delegated administrative or regulatory powers. [Citations.]" (*Id.* See also *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 380-382 [71 Cal.Rptr. 687, 445 P.2d 303]; *In re Petersen* (1958) 51 Cal. 2d 177, 185-186 [331 P.2d 24, 77 A.L.R.2d 1291] [app. dism. (1959) 360 U.S. 314 (3 L.Ed.2d 1259, 79 S.Ct. 1294)]; *Wotton* v. *Bush* (1953) 41 Cal.2d 460, 469 [261 P.2d 256]; *Jersey Maid Milk Products Co.* v. *Brock, supra,* 13 Cal.2d 620, 644-645 and 655-656; and *People* v. *Associated Oil Co.* (1930) 211 Cal. 93, 106-109 [294 P. 717].)

■ Section 25660 may be read as follows: "It is the purpose of this chapter to establish standards of education, training and experience for persons who use X-rays on human beings [to protect "the people of this state" "from excessive and improper exposure to ionizing radiation"] and to prescribe means for assuring that these standards are met." It is concluded that the Legislature has sufficiently pointed out the purposes of the statute (see *Jersey Maid Milk Products Co.* v. *Brock, supra*), and that regulations consistent therewith should be upheld against attack on the grounds the statute fails to set forth definite guidelines for the department and the certification committee.

It is unnecessary to consider in connection with this case the hypothetical regulations suggested by appellants which they contend, on the one hand, would obviously be too simple to carry out the purpose of the statute, or, on the other hand, might be more exacting than necessary for that purpose. ■ It suffices to note that the regulations brought into question in this case concerning the reciprocity to be given members and licentiates of ART appear to reasonably carry out the legislative purpose. Moreover, appellants in the second action have been granted adequate opportunity for review in connection with their petition for writ of mandate.

The judgment in the mandaus action (No. 1 Civ. 30996, superior court No. 411530 is affirmed. The order denying the preliminary injunction in the declaratory relief action (No. 1 Civ. 30995, superior court No. 411487) is affirmed. The judgment in the latter action is reversed for further proceedings not inconsistent with the views set forth in this opinion. Let each party bear his or its costs of appeal in the latter action.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 29, 1973.